the remark of the district attorney was to the effect that the motive for the killing was known only to the deceased and the defendant, and that when the defendant objected he instructed the jury to disregard the statement of the district attorney.

We find no reversible error in the remarks made by the district attorney, even though the judge had not instructed the jury, which was on his own motion, to disregard the remarks.

It appearing that the defendant was a union man and the deceased was not, the district attorney was well within his rights to have argued that that furnished a motive.

But he did not go that far, and contented himself with the statement that the motive was known only to the accused and the man whom he had killed.

The accused had testified on his own behalf, and had full opportunity of refuting any intimation of a motive on his part for the killing, arising from the facts stated.

The jury, after hearing the evidence, found the accused guilty. The trial judge, who likewise heard the evidence, gave his unqualified approval of that verdict. This court is without right and without power to say that either the jury or the court was wrong in so finding under the evidence.

The conviction and sentence are affirmed.

(119 So. 69)

No. 29523.

THOMPSON v. MORGAN.

In re THOMPSON.

Nov. 26, 1928.

W. M. Harper, H. H. Russell, and J. B. Dawkins, all of Monroe, for applicant.

George Wesley Smith, of Rayville, for defendant.

LAND, J. Relator was injured in the collision of a motorcar, operated by him as gang foreman, with an automobile driven by defendant. The accident occurred in the afternoon of February 3, 1927, at a crossing over the tracks of the Missouri Pacific Railroad at Sicard in the parish of Ouachita.

The lower court awarded relator damages for the personal injuries received by him in the collision. The Court of Appeal, Second Circuit, reversed this judgment, and its decision is now before us for review.

The Court of Appeal found that both relator and defendant were at fault, and held that the negligence of relator, as gang foreman, consisted in his operating a motorcar, owned by the railroad company, without being equipped with gong or other device for signalling, and in his failure to give any signal as he approached the railroad crossing.

There are three tracks at the Sicard crossing—a team track, passing track, and a main track. The tracks run north and south.

The Dixie Overland Highway parallels the tracks on the west for a distance of about 1,000 feet, but turns abruptly east a short distance before reaching the crossing.

In approaching the crossing from the west side, the tracks lay in the following order: Team track, passing track, and main track upon which the accident occurred.

When defendant arrived at the crossing in his automobile, he had traveled over the Dixie Overland Highway a distance of 1,000 feet in a northerly direction. In covering this distance, defendant kept a lookout towards the north, but failed to detect the approach of any train. The view of the tracks north of the crossing was obstructed by a box car spotted on the team track at a distance of 62 feet above the crossing, and also by a skirt of woods growing up to the right of way.

Defendant lowered the speed of his automobile by placing it in second gear at the abrupt turn in the highway as it extends east to cross the tracks of the railroad. He then directed his attention to the south, and continued to look in that direction for danger up to the moment of the accident. As defendant failed, while on the crossing, to look to the north, the direction from which the motorcar approached, he was guilty of negligence, notwithstanding the care with which he had approached the crossing.

It is negligence for a person to be upon the track of a railroad without keeping watch both ways for trains. Vappi v. Morgan's Louisiana & T. R. & S. S. Co., 155 La. 189, 99 So. 31; 8 Thompson on Negligence, par. 170; 33 Cyc. Railroads, p. 924.

The duty to look and listen before crossing a railroad must be performed at a time and place where looking and listening will be effective. Young v. Louisiana Western R. Co., 153 La. 129, 95 So. 511.

Relator admits in his testimony that the motorcar which he was operating was not equipped with signalling devices of any kind. He admits that his engine was cut off as he neared the crossing, and necessarily the approach of the motorcar to the crossing was not accompanied by the usual volume of noise.

He was aware of the presence of the box car on the team track, and of the obstructed view to the north, thereby rendering the crossing more dangerous to motorists approaching it from the west side of the tracks.

Besides, relator admits seeing the defendant as he reached the abrupt bend in the highway, as it turns at the stop sign to cross the tracks, a short distance from the railroad crossing.

If relator saw defendant at all at this point, he must have realized the fact that defendant was looking south, and not north, from which direction the motorcar was approaching, and that defendant continued to look south, away from the direction of the im-

pending danger, after he had reached the crossing. Under such conditions, relator was not justified in presuming that defendant would perform his duty and obey the law, as relator had reasonable ground from the actions of defendant to think otherwise.

Relator could have stopped his motorcar before reaching the crossing, had he attempted to do so when he first noticed the presence of defendant. At that time the speed of the motorcar had been reduced from 15 miles to 10 or 12 miles an hour, and relator was about 100 feet from the crossing. The evidence shows that a motorcar, moving at the rate of from 10 to 12 miles an hour, can be stopped within from 40 to 60 feet.

We are not impressed with the testimony of relator to the effect that defendant approached the crossing at a speed of 25 to 30 miles an hour. Had this been the case, no accident could have possibly occurred.

Relator first observed defendant at or near the stop sign at the turn of the highway. This sign is about 50 feet from the west rail of the first or team track, and from this point to the west rail of the third or main track the distance is 28.5 feet.

It is not possible that a motorcar, running at a speed of 10 or 12 miles an hour, could have reached the point of collision, a distance of 100 feet down the main track, at the same time that an automobile reached the same point on the crossing, when the latter vehicle was running more than twice as fast as the motorcar, and had a shorter distance to traverse.

The testimony of relator as to the speed of the automobile cannot be accepted, as the collision could not have occurred under the conditions stated by him.

Both the motorcar and the automobile were traveling at about the same rate of speed, in our judgment, with the advantage, if any, in favor of the motorcar as to the higher speed.

■ It is a cardinal rule in the law of negligence that the greater the danger the greater is the degree of care required. A motorcar, unequipped with signalling device of any kind, is a constant menace to the safety of the public at a blind railroad crossing. A motorcar with trailer is much smaller in size than the average engine and train, is less visible, and, in approaching a crossing, makes considerably less noise. If the modern passenger train with its air brakes must be supplied with bell and whistle, notwithstanding its size and the usual noise of its approach at a crossing, for greater reasons should a motorcar with trailer, as in this case, be equipped with some efficient signalling device, since the noise of its approach may be silenced and lost in the noise of an automobile as it nears the crossing.

It is negligence to operate a motorcar on railroad tracks without the same being equipped with signalling apparatus to give warning of approach to public crossings. Coyne v. C., C., C. & St. L. R. Co., 208 Ill. App. 425; St. L., B. & M. Ry. v. Watkins (Tex. Civ. App.) 245 S. W. 794.

The operator of a motorcar is bound to give some signal as he approaches a public crossing, since the usual noise made by a motorcar is not sufficient. Davis v. Boggs, 22 Ariz. 497, 199 P. 118.

When there are obstructions to the view by a motorist of railroad tracks which he is approaching, there is greater obligation on the part of trainmen to ring the bell or sound the whistle than under other conditions. Cline v. N. Pacific Ry., 123 Wash. 86, 211 P. 878.

■ In our opinion, relator was negligent. We do not hold that relator, as gang foreman, was guilty of negligence because the railroad company failed to equip his motorcar with the necessary signalling device, but we do hold that it was negligence upon the part of relator, as gang foreman, to operate his motorcar without such device, and with-

out giving some effective warning of its approach to the railroad crossing. In so holding, we do not impute to relator, as servant, the negligence of the master in failing to equip the motorcar with proper signalling device; but we hold the servant himself culpable for his own individual fault and carelessness in operating the motorcar without such apparatus, and in failing to give the necessary signal while approaching a public crossing.

In our opinion, the case at bar is one in which the negligence of both parties was concurrent and continuous down to the moment of the accident. In such a case, the doctrine of last clear chance has no application. Young v. Louisiana Western R. Co., 153 La. 129, 95 So. 511; Callery v. Morgan's La. & T. R. & S. S. Co., 139 La. 770, 72 So. 222; Wolf v. N. O. Ry. & Light Co., 133 La. 891, 63 So. 392; Castile v. O'Keefe, 138 La. 479, 70 So. 481.

As relator contributed to the accident by his own want of ordinary care, he may not recover damages against defendant, who may have been negligent. Belle Alliance Co. v. Texas & P. Ry. Co., 125 La. 777, 51 So. 846, 19 Ann. Cas. 1143; Schwartz v. Crescent City R. Co., 30 La. Ann. 15, 20.

It is ordered that the judgment of the Court of Appeal rendered herein be affirmed, and that relator pay the costs of this proceeding.