TUCKER, Judge:
The plaintiff, Thomas C. Freeman, brings this suit to recover damages for his personal injuries, medical expenses and loss of earnings, arising from an accident which occurred on January 24, 1968 about 7:20 A.M. in the Town of Covington, Louisiana at the intersection of the Shoreline Branch of the Gulf, Mobile and Ohio Railroad and East Lockwood Street. The plaintiff was operating a motor car on the railroad tracks in a southerly direction, and before the accident the defendant driver of a Chevrolet automobile had been proceeding southerly on New Hampshire Street approximately paralleling the railroad right of way. When the Chevrolet car reached the intersection of New Hampshire and East Lockwood Streets, controlled by a traffic signal light, Vines turned right, moving westerly along East Lockwood for a distance variously estimated between thirty and forty feet toward the railroad tracks. In the meantime Freeman, a welder for the Railroad, accompanied by his helper, Jack H. Thomas, had moved the motorcar partially into the East Lockwood crossing at a speed estimated to be one mile per hour. When Freeman saw the car make its turn from New Hampshire Street, he immediately brought the motorcar to a halt some four feet into the right hand or west bound lane of East Lockwood. The Chevrolet car did not stop, but continued along its westerly path some thirty to forty feet until the right front of the automobile collided with the left front of the motorcar. The front of the motorcar was knocked off the track at an angle of about 45°, and Freeman, with the exception of his left leg which remained hooked under the seat, was knocked free from the motorcar onto the East Lockwood road surface. The rear wheel of the Chevrolet car passed over Freeman’s left arm and hand commencing approximately at his elbow.
Neither Jackson nor anyone else preceded the motor car to warn motorists traveling on East Lockwood of the motorcar’s approach. The only signal involved was the usual railroad stop sign which was positioned in advance of the railroad crossing, facing Vines as he drove toward the crossing. The crossing was substantially a blind one in view of the fact that the old railroad station encroached south almost to the East Lockwood right of way. Freeman further conceded that at some crossings an individual, such as Jackson, would flag automobiles before the motorcar entered the street, but he did not consider that the subject crossing or intersection demanded this attention.
The lower court decided that both Vines and Freeman were negligent — Vines wrongdoing, consisting of his failure to stop before proceeding across the railroad tracks, and plaintiff’s miscreant act being his entering the intersection before determining that the Vines right turning vehicle was approaching on New Hampshire Street, preparing to turn into East Lockwood.
The trial court dismissed plaintiff’s main demand and the reconventional demand of the defendant. From the judgment plaintiff has perfected this appeal.
In substance the plaintiff in brief raises as the sole issue the question as to whether or not the trial court properly concluded that Freeman was guilty of contributory negligence under the attendant facts.
The case of Thompson v. Morgan, 167 La. 335, 119 So. 69 (1928) involved a colli *95 sion between an automobile and a motorcar. Under the particular facts in the cited case before the Supreme Court both the driver of the automobile and the plaintiff operator of the motorcar were adjudged guilty of negligence and plaintiff was refused recovery. However, the facts in Thompson were at variance considerably with the facts in the instant case. There the motorcar operator had seen the approach of the automobile toward the crossing when the motorcar was 100 feet from the crossing while the motorcar was traveling ten to twelve miles per hour at which speed the motorcar could be stopped within forty to sixty feet. The motorcar operator was aware of the presence of the box car on the team track which obstructed the view to the north. Since the motorcar was not equipped with a gong or other similar signalling device, and with the further surmise that the operator realized that the attention of the motorist was directed to the south rather than to the north from which direction the motorcar was proceeding, the court determined that the negligence of the motorcar operator, along with that of the automobile driver in failing to stop, look and listen before crossing the three railroad tracks, was concurrent and continuous down to the moment of the accident. The doctrine of last clear chance was held inapplicable since the negligence of both parties continued to the time of the accident. The treatment accorded the last clear chance doctrine has been modified in the subsequent jurisprudence but neither of the litigants have, on appeal, contended that the doctrine of last clear chance applies to the particular facts of this case. In the instant case the motorcar moved into the intersection when there was no traffic on East Edgewood Street and before the Vines Chevrolet, then traveling south, had reached the New Hampshire and East Edgewood street intersection. The gist of both the Freeman and Jackson testimony is to the effect that when the motorcar first entered the East Edgewood intersection there was no traffic on the East Edgewood Street proceeding in either direction, and it was not until the motorcar was committed and had entered the intersection that the Chevrolet car turned right at the traffic light from New Hampshire into East Edgewood and proceeded west to the point of impact with the motorcar. Freeman estimated that when he first observed the Chevrolet car turn right into East Edge-wood, he brought the motorcar to a full stop within a space of two feet. It appeared to Jackson that the automobile rounded the corner at an excessive rate of speed, or that the driver lost control of the vehicle when he was confronted with the motorcar, and that Vines attempted to pass to the left of the motorcar. Therefore, the facts of the instant case are almost completely distinguishable from those of the Thompson case with the exception that the same types of vehicles were involved in each case, and the intersections or crossings were both blind ones.
We are uninformed with reference to legislation or jurisprudence which has tended to jettison the old and accepted statutory rule which requires a motor vehicle driver to stop, look and listen when negotiating a railroad crossing; the motorist is required to use such care as is commensurate with the existing dangers; and the greater the danger at a given crossing, such as is the case where the view is obstructed, the higher degree of caution which is imposed upon the motorist. The actual stopping of his vehicle by the motorist is not imperative unless the circumstances require this precaution. However, it has been uniformly held in Louisiana that the motorist must look and listen, and keep his car under such control that he can stop his vehicle to avoid an accident with a railroad unit either into or approaching the intersection. See Fowler v. Texas Pacific Ry. Co., 184 So.2d 756 (La.App.2d Cir. 1966); Sule v. Missouri Pacific Railroad Co., 181 So.2d 280 (La.App. 4th Cir. 1965), writ refused 248 La. 916, 182 So.2d 664 (1966); Bertrand v. Missouri Pacific Railroad Co., 160 So.2d 19 (La.App.3d Cir. 1964), writ refused 245 La. 1075, 162 So.2d *96 571 (1964); and Kavanaugh v. Travelers Insurance Co., 203 So.2d 780. Of course, the same duty of greater caution is imposed upon a train when it approaches a blind crossing. See Glisson v. Missouri Pacific Railroad Co., 158 So.2d 875 (La.App.3d Cir. 1964), affirmed 246 La. 470, 165 So.2d 289 (1964).
In light of the above jurisprudence the trial court was eminently correct in holding that the defendant Vines negligently operated his automobile, where he failed to give proper observation to the railroad stop sign in advance of the crossing, and in his failure to bring his automobile to a halt in order to avoid the collision with the motorcar. The negligence of the defendant motorist was held properly to be a causative factor contributing to the accident.
In line with the applicable statutes and rules we believe the lower court committed manifest error in its conclusion that under the facts at hand the plaintiff Freeman was likewise negligent principally because he did not use a flagman at the crossing so that he might be warned of motorists traveling on East Lockwood Street. This purported negligence on the part of Freeman, according to the trial judge, was also a proximate cause of the accident.
We are unable to agree with this analysis. In order to fix negligence on Freeman contributory to the accident defendants rely upon the collective testimony of Freeman and the witness Jackson that it was the custom at particularly hazardous crossings for Jackson to proceed afoot ahead of the motorcar into such an intersection in order that he might warn the motorcar operator of the approach along the street of vehicular traffic. Freeman stated that at such times the flagman was used for the purpose of keeping the motorcar from negotiating the intersection while automobiles were proceeding along the street, and when the flagman would apprise him of approaching traffic, he would stop the motorcar and accord such opposing vehicular traffic the right of way to proceed over the crossing in advance of the motorcar. Defendants claim that the record clearly indicates that this crossing is in the middle of the town of Covington and is also a completely blind one, and that the peril posed by the intersection is positively manifest. Against this position Freeman and Jackson testified that they did not think this crossing was sufficiently dangerous to justify the use of a flagman; that when the motorcar moved slightly into the intersection there was no vehicular traffic on the street. When Vines turned right into East Edgewood only thirty to forty feet east of the crossing he immediately applied his brakes, and the motorcar was stationary four feet into the intersection when the automobile collided with the motorcar.
It is understandable that a motorcar operator would employ customarily a flagman at a dangerous crossing, if for no other reason than his own self-preservation. Nonetheless, the evidence here is convincing that the use of a flagman under the extant circumstances would have produced no salutary effect whatever. In all likelihood the flagman’s life and safety would have been unnecessarily endangered. The defendant Vines did not testify as he was unavailable when the case was called for trial. However, it appears from the ensuing events after Vines turned at the traffic light into East Edgewood that he did not properly observe and give due attention to the stop sign at the railroad crossing, nor did he take reasonable steps to avoid a collision with the motorcar.
Although Freeman admitted that it was his custom to grant an automobile the right of way at an intersection, we think the statutory duty imposed upon a motorist by LSA-R.S. 32:172 to give and concede the right of way to a railroad unit at a railway crossing is substantially the same, whether the unit be a train or a motorcar. As stated before the jurisprudence holds that the duty to stop is not always sacramental where the circumstances do not *97 suggest the necessity of stopping, but here the presence of the motorcar partially into the intersection required Vines to stop before the crossing in order to avoid the collision.
We now turn to the question of quantum. The plaintiff Freeman suffered a painful, though not serious nor disabling, injury to his left arm from the level of his elbow down his hand and fingers. He was seen initially by Dr. Upton Giles at St. Tammany Parish Hospital. X-rays were negative for fracture. Dr. Giles administered two injections, placed plaintiff’s left hand and forearm in a whirlpool, and applied a short arm cast. Freeman first consulted his family physician, Dr. W. S. Harrell, Bogalusa, La., on February 2, 1968 at which time this physician’s report indicated that there was no swelling, tenderness or limitation of motion in the left elbow or wrist. There was tenderness over the base of the left middle metacarpal bone and some weakening of the grip in the left hand. Dr. Harrell diagnosed the plaintiff to have suffered a healed severe sprain of the left elbow and wrist with a healing contusion of the dorsum of the left hand. On February 9, 1968 x-rays made at the Medical Center, Bogalusa, La., were negative for fracture of the left hand. Mr. Freeman was told to discontinue the use of the splint. Dr. Harrell stated that on February 18, 1968 the plaintiff voluntarily discontinued his visits to this physician.
Plaintiff described his injuries as consisting of a swollen and discolored left arm from his elbow to his fingertips; that he had a throbbing pain like a toothache when he was first injured. Although he remained on the job and the railroad payroll, he said that he was unable to do any work for four or five weeks after the accident. On the day of the trial he testified that he was still experiencing a sharp cutting pain in his affected parts. There is no evidence that the plaintiff lost any wages.
The plaintiff’s injuries, caused by his fall onto the asphalt pavement and the right rear wheel of the automobile passing over his left arm from the elbow to the fingertips, resulted in rather substantial pain, but was not accompanied by permanent damages or residuals. Under the circumstances we believe that an award of damages to the plaintiff in the sum of One Thousand Two Hundred Fifty ($1,250.00) Dollars is proper and justified under the jurisprudence of this state for the pain and suffering caused by the bodily injuries which he experienced in the accident. See Alexander v. Fidelity-Phoenix Ins. Co., 185 So.2d 102 (La.App. 4th Cir. 1966); Manning v. Morrison Cafeterias Consolidated, Inc., 160 So.2d 818 (La.App. 4th Cir. 1964), writ refused 246 La. 81, 163 So.2d 358 (1964). The special damages for medical expenses in the sum of Ninety-Two and 50/100 ($92.50) Dollars are not disputed.
For the foregoing reasons the judgment of the lower court is reversed insofar as the judgment denied plaintiff’s main demand; and judgment is now rendered in favor of the plaintiff, Thomas C. Freeman, and against the defendants, Billy G. Vines and State Farm Mutual Automobile Insurance Company, jointly, severally and in solido in the full sum and amount of One Thousand Three Hundred Forty-Two and 50/100 ($1,342.50) Dollars, with legal interest from judicial demand until paid at defendants’ costs;' in all other respects the judgment is affirmed.
Affirmed in part: reversed in part and rendered.