Floyd C. **HOWARD** et al.

v.

**ILLINOIS CENTRAL RAILROAD COMPANY.**

Civ. A. No. 71–147.

United States District Court,
M. D. Louisiana.

Oct. 4, 1972.

Carl A. Guidry, DeBlieux, Guidry & Lowe, Baton Rouge, La., for plaintiffs.

H. Payne Breazeale, Henry D. Salassi, Jr., Breazeale, Sachse & Wilson, Baton Rouge, La., for defendant.

E. GORDON WEST, District Judge:

This case arises out of an accident at a railroad crossing near Baton Rouge, Louisiana, which occurred on May 12, 1970. On that date Illinois Central Train No. 97 collided with an automobile owned by Floyd Howard and operated by his wife, Aline Howard, who, at the time, was the sole occupant of the automobile. The plaintiffs allege that the defendant's train was being "operated in a negligent manner and that the defendant was otherwise negligent and had the last clear chance to avoid the accident."

A pre-trial conference was held in this case, at which time a proposed pre-trial order was presented to the Court. After reviewing the proposed order, it was apparent that the issues in the case had not been delineated and there was no indication contained therein nor in the pleadings previously filed as to what acts of negligence the plaintiffs were relying on as grounds for their claim for damages. As a consequence, at the Court's suggestion, counsel for the defendant filed a motion for summary judgment and supported its motion with a statement of facts, several affidavits, and numerous photographs. Plaintiffs filed an opposition to this motion supported with what purports to be a countervailing affidavit and a group of photographs. It is this motion for summary judgment that is now before the Court.

It is, of course, too well settled to require citation of authority that summary judgment is appropriate only in those cases where there is an absence of material issues of fact and where the

uncontested facts require that a judgment thereon be rendered as a matter of law. Ordinarily, cases such as the one before us, involving collision and personal injuries, do not lend themselves to summary proceedings. But this particular case is one of the exceptions to the general rule. Accepting the facts in this case in the light most favorable to the plaintiffs, it is the opinion of this Court that the defendant is entitled to a judgment of dismissal as a matter of law.

■ The uncontested facts show that the accident complained of occurred at about 4:10 p. m. on May 12, 1970, at the intersection of Dean Lee Drive and the Illinois Central Railroad track a short distance south of the City of Baton Rouge, Louisiana. Both sides of the crossing are clearly marked with "LOUISIANA LAW STOP" signs. At the time of the accident the weather was clear, dry and visibility was excellent. Prior to departure from the North Baton Rouge yard, the train had undergone a complete mechanical inspection and brake test, and there is not even an allegation that any malfunction of the train caused the accident. Immediately prior to the accident the train was traveling 40 miles per hour, well within the speed limit, and as it approached the Brightside Lane crossing, 850 feet north of Dean Lee Drive, its headlight was burning, its bell was ringing, and the regulation horn signals were being given. These signals were continued for the Dean Lee Crossing. Brightside Lane crosses the railroad track about 850 feet north of the Dean Lee Drive crossing. Immediately after the engine cleared the Brightside Lane crossing, the engineer observed the plaintiffs' automobile slowly approach the Dean Lee Drive crossing from the west, headed east. As the automobile reached the west rail of the track, it stopped, partially blocking the track. The engineer was about 200 feet from the crossing when it first became apparent to the engineer that the automobile was not going to move off the track. He immediately put the train into full emergency stop, but was unable to avoid the collision. At 40 miles per hour, it required at least 300 feet to stop the train. There has been no evidence offered by the plaintiff to refute these facts. In opposition to the defendant's motion, the plaintiffs merely assert that there is a genuine issue as to (1) "when the engineer reacted to the presence of the vehicle on the track, and whether he acted in a reasonable manner * * * ", and (2) "whether or not the defendant railroad maintained a safe crossing * * * ", and (3) "whether or not the defendant had the last clear chance to avoid this accident." But in response to defendant's motion for summary judgment, the plaintiffs have had the opportunity to refute the defendant's offer of proof and they have introduced only an affidavit of a so-called "self-employed accident investigator" and a series of photographs which the Court finds to not create the material issues of fact suggested by the plaintiffs. The photographs filed in evidence by the plaintiffs were taken by the same accident investigator whose affidavit has been filed by the plaintiffs. They purport to show that there were obstructions to the plaintiff's view which were the result of improper track maintenance. The photographs could not possibly support this contention. These photographs, introduced by the plaintiffs, clearly show that at a distance of 25 feet from the track a motorist has an unobstructed view to the north of several hundred feet, and from a distance of 10 feet from the track, the view is completely unobstructed for an unlimited distance. La.Rev.Stat. 32:171 provides, in part:

"Whenever any person driving a motor vehicle approaches a railroad grade crossing * * * the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely."

These photographs show beyond dispute that had the plaintiff stopped her car

when she was from 15 to 25 feet from the crossing, her view would have been completely unobstructed for a distance sufficient to have seen the approaching train. It is obvious from these photographs that the view was not so obstructed that the plaintiff, Mrs. Howard, would not have seen the train if she had complied with the Louisiana law and stopped her car at a safe point where she had a clear view of the tracks. In Kavanaugh v. Travelers Insurance Company, 203 So.2d 780, 783 (La.App. 2nd Cir. 1967), it was held:

"A motorist negotiating a railroad crossing is burdened with the responsibility of seeing and hearing that which he could have seen and heard, and he is presumed, in law, to have seen and heard what he could have seen and heard. * * * If the motorist's view of the right of way is obstructed, he must exercise a higher degree of caution to ascertain there are no trains in the vicinity."

Thus, the Court finds as a matter of law that the defendant was not guilty of negligence in failing to properly maintain the crossing in question. And in further support of this conclusion, the Court notes that the plaintiffs' accident investigator concludes that the plaintiff's automobile had been stalled directly on the track for one minute before the collision, and that at the commencement of that period of one minute, the defendant's train was 3,540 feet north of the intersection. So if we accept the plaintiffs' testimony as true, it is quite obvious that for a full minute before the collision there was nothing about the intersection which obstructed plaintiff's view of the on-coming train.

Turning to the question of whether or not the engineer acted properly after seeing the plaintiff's automobile on the track, the Court concludes that, as a matter of law, there is no material issue of fact involved that could lead to the conclusion that the engineer was guilty of negligence. The engineer, in his affidavit, which has in no way been contradicted, states that he saw the plaintiff's automobile *approach* the Dean Lee crossing just as his engine cleared the Brightside Lane crossing. This would have been when his engine was less than 850 feet north of Dean Lee crossing. At that time the engineer assumed, as he had a legal right to do, that the automobile would proceed across the crossing and not stop thereon. It was not until the engine was about 200 feet from the crossing that the engineer realized that the plaintiff was not going to proceed across. There is no dispute about the fact that at that point the engineer did all that he could possibly do to avoid the collision. He put the train in emergency stop but it was too late. Louisiana law does not require the engineer of a train to anticipate that a motorist approaching a crossing will stop on the track while a train is coming. On the contrary, the engineer is legally entitled to presume that the motorist will *not* obstruct the track. As was stated in McCray v. Illinois Central Railroad Co., 244 So.2d 877, 880 (La. App. 1st Cir. 1971):

" * * * A motorist * * * is bound to stop, look and listen for an approaching train by the statutory provisions of both L.R.S. 32:171 subd. A(3) and (4) and L.R.S. 45:563. There is no such statutory provision requiring a train to stop, look and listen for approaching automobiles or even to be able to stop before reaching an intersection unless there is an apparent hazard or obstruction on the tracks and the train crew realize or should realize that an accident would necessarily result. On the contrary, the train is only required to give the audible warnings of its bell and whistle under the provisions of L.R.S. 45:561. Furthermore, the engineer may assume that a motorist will operate his automobile in a manner consistent with the duty imposed by the cited statutes."

And in Theriot v. Texas & New Orleans Railroad Co., 220 So.2d 563, 568 (La.

App. 4th Cir. 1969), the law of Louisiana was summarized thusly:

" 'The jurisprudence is uniform that those in charge of railroad trains may presume that an individual or vehicle approaching a crossing will stop in time to avoid an accident; and the crew is not required even to attempt to stop unless there is reason to believe the approaching motorist is unaware of the oncoming train or does not intend to stop; * * *' Hymel v. Texas & N. O. R. Co., 145 So.2d 138, 140, La.App.1962."

" ' * * * The crew members had the absolute right to believe that plaintiff would obey the law and bring his vehicle to a stop and then look and discover the approach of the train. The members of a train crew are not negligent in indulging in the assumption that a motorist approaching the track will bring his vehicle to a stop, and there is no negligence even when they persist in such reasonable belief until it is no longer in their power to avoid the accident. * * *.' Parks v. Texas Pacific-Missouri Pac. Terminal R. Co., 152 So.2d 845, 849, La. App.1963."

Thus, there was no duty upon the train crew to "prepare to stop" when they saw the plaintiff's car approach the crossing. They had the right to assume that the plaintiff would either stop and wait for the train to pass or to proceed across the track if she had time to safely do so. In this case, the plaintiff did neither. She stopped on the track. As soon as the engineer realized what had happened he did all in his power to avoid the collision but it was too late.

■ If anyone had the last clear chance to avoid both the collision and the personal injuries complained of, it was the plaintiff, Aline D. Howard. When she was 15 to 25 feet from the track, she could have and she should have seen the train approaching and she could have and should have waited for it to pass. But even after she attempted to make the crossing and stalled on the

track, if we believe the testimony filed in her behalf, she had a full minute, with the train over 3500 feet away at the commencement of that minute, within which to have extricated herself from the position of danger in which she, and she alone, had placed herself. The engineer had no such last clear chance. He presumed, as he had a right to do, that the plaintiff would either wait for the train to pass before attempting the crossing, or if she attempted to cross, that she would do so without obstructing the path of the train. By the time he realized that the plaintiff would do neither of these things, it was simply too late for him to avoid the collision even though he obviously used due diligence in attempting to do so. If we accept the defendant's version to the effect that the train was 800 feet from the crossing when the plaintiff's car *approached* the track, we must come to the same conclusion, i. e., that the engineer was not guilty of negligence causing this accident. It is uncontradicted that it would take at least 300 feet to bring this train, traveling 40 miles per hour, to a stop. If the plaintiff's car *approached* the track with the train 800 feet away, it would be necessary for the engineer to conclude that the car was going to stop on the track and obstruct the path of the train within the time that it took the train to travel 500 feet. This length of time would be eight seconds. But during a part of this eight seconds, the plaintiff's car had traveled from the point at which it was observed *approaching* the track to the point at which it stalled on the track. During that time, at least, the engineer had the right to presume that the car would proceed across the track and out of the way of the train, and he was under no duty during that time to "prepare to stop." Thus, regardless of whose version of this accident we accept as true, there are simply no material issues of fact involved that could lead to the conclusion that this accident and resulting damages was caused by any negligence on the part of the defendant railroad. The evi-

dence, no matter how viewed, conclusively shows that, as a matter of law, the engineer of the defendant's train was guilty of no negligence proximately causing this accident. And the evidence, no matter how viewed, conclusively shows that it was not the defendant or its employees who had a last clear chance to avoid this accident. The evidence clearly shows that the engineer of the defendant's train, through no fault of his own, simply did not have sufficient notice of time to prevent this collision, and hence, the defendant is not legally responsible for the damages resulting therefrom. For these reasons, the defendant's motion for summary judgment will be granted, and judgment will be entered accordingly dismissing this suit.