SAMUEL, Judge.
Plaintiff filed this suit for personal injuries and lost wages resulting from a collision between a large truck operated by him and a Baldwin diesel locomotive on Mehur-in Street at its intersection with defendant’s railroad switch track in Jefferson Parish. The accident occurred on August 28, 1970 between 2 and 4 a. m. It was stipulated at the trial that as a result of the plaintiff’s injuries he was incapacitated for a period of 4 weeks and lost $520 in wages.
After trial on the merits, the lower court rendered judgment'in favor of the plaintiff for $3,663. Defendant has appealed.
At the time of the accident plaintiff, a truck driver, was engaged in hauling loads of bananas from docks in New Orleans to the trucking company’s office on Boyce Road in Jefferson Parish. On the day prior to the accident he commenced work at approximately 7 a. m., completed eight loads, and ceased working at 10 p. m. He returned home in the tractor portion of his tractor-trailer refrigerated truck rig and, after bathing and eating, slept until sometime between 2 and 4 a. m. the next morning. Arising at that time, he dressed and drove the truck toward his place of employment without eating breakfast.
Approximately one block from his employer’s office, he was required to cross two sets of railroad tracks immediately prior to making a left turn into a road adjacent to the tracks in order to reach the office. He had traveled this route many times a day, both during daylight hours *813 and at night, and he was thoroughly familiar with the existence of the railroad tracks and their locations. He testified he had often seen railroad trains conducting switching operations at night on the tracks in question. Plaintiff contradicted himself as to whether he stopped the tractor before attempting to cross the tracks or whether he merely came to what is commonly referred to as a “moving stop”. In either event, he said he looked both to his left and to his right, saw and heard nothing, and proceeded to cross. Before he had completed the crossing, defendant’s switch engine struck him from the right at or near the rear wheel of the tractor, pushing that vehicle a short distance and causing it to come to a halt partially in a ditch.
Plaintiff did not deny that the engine light was on, that the whistle was sounding and the bell was ringing, or that there were red lights blinking on the engine. He merely stated he was in the air conditioned cab of the tractor with both windows rolled up, looked in both directions, neither saw nor heard anything, and proceeded across the tracks in order to make a left turn on the other side thereof. The only excuse he offers for his failure to see the engine is the fact that it proceeded from behind a large metal warehouse and weeds to his right which obscured the tracks and any vehicles thereon from his vision.
The train crew testified they stopped the train to investigate a dust cloud (possibly indicating trouble with a car being pulled by the train) a few hundred feet down the track to the plaintiff’s right, and that by the time they reached the intersection of Mehurin Street the train had only attained a speed of between 2 and 3 miles per hour. This fact was stipulated as correct by plaintiff’s counsel.
The engineer testified the engine was approximately 40 feet long and the cab in which he rode was at the rear. His seat was on the right side of the engine, or on the opposite side from which the plaintiff’s vehicle was approaching. As he neared the intersection of the railroad tracks with Mehurin Street, the fireman, who was on the left side of the engine (the side to~ which the plaintiff was proceeding), told him to stop and the engine was thrown into an emergency stop. He stated, without equivocation, that at the time of the accident he specifically remembered the engine’s headlight was on, the engine’s bell was ringing, flashing red lights on the engine were in operation, and he was sounding the whistle as he approached the intersection with the customary four blasts thereon.
The fireman testified he was on the left side of the engine and had a direct view of the intersection involved. He did not see the tractor until its front portion was on the track. When asked why he did not see it sooner, he candidly answered that it was a blind intersection. While he also said the engine’s headlight was on, the bell was ringing, and the red lights were flashing, he had no independent recollection of whether or not the engineer was in fact sounding the train whistle as he approached the intersection.
Another employee of the defendant was aboard the engine. However, he testified he saw nothing of the accident and knew nothing of the safety devices being on because he was preoccupied with his duties in connection with servicing the warehouses in the area and was not paying any attention to either the operation of the engine or the location of the accident.
Finally, the defendant offered the testimony of the manager of its engineering and maintenance department who stated he conducted and supervised a line-of-sight measurement at the scene of the accident from which he determined that the plaintiff could have seen approximately 36 feet down the track in the direction from which the engine was coming on the night in question.
*814 In the case of Odom v. Hooper,[1] the Supreme Court of Louisiana stated that in train-car collisions the court should try each case on its own facts and not feel bound by the hard-and-fast rules which have evolved in our jurisprudence in the past which place a heavy burden of proof on the driver of a car or truck to show his right to recover damages.
Considering the statement that this type of case should be tried on its own facts, it is our opinion that here the facts show negligence on the part of plaintiff himself was a proximate cause of the collision. As such negligence bars recovery, it is not necessary for us to discuss or decide the question of negligence on the part of defendant. As has been pointed out plaintiff knew of the existence of the railroad tracks at the particular spot for the reason that he traversed the area on numerous occasions both day and night. He also knew switching operations were conducted on the track most frequently at night. He testified that he looked both to his left and to his right, that he saw nothing to his left and that he could see nothing to his right because his line of sight in that direction was obscured by the warehouse building and by bushes. Moreover, he further testified that he neither saw the light from the engine’s headlight, or the flashing red lights, nor did he hear the train’s bell or its whistle until immediately before impact.
In our opinion, the record establishes that if the plaintiff had come to a stop, he would have seen the engine, or the reflections from its headlights or its flashing red lights in time to avoid the collision. Of greater importance, and alone sufficient to establish negligence, if he had properly listened he would have heard the train’s whistle blowing and the bell ringing with little or no trouble. Instead, his only testimony is that he saw nothing and heard nothing prior to crossing railroad tracks when it was established that the light, or reflections thereof, were in fact there to be seen and the noise from the engine was in fact there to be heard. The facts of the case can only lead to the conclusion that the plaintiff was guilty of negligence for not seeing what a reasonable man would have seen and for not hearing what a reasonable man would have heard prior to attempting to cross the defendant’s railroad tracks.[2] As stated above, there is some evidence that the defendant could have seen approximately 36 feet down the track in the direction from which the train came. However, assuming that the weeds were sufficiently high and dense and the building sufficiently high so as to block the defendant’s line of sight completely, such a circumstance serves not to lessen the duty of care imposed on the plaintiff, but on the contrary increases the duty placed upon him to ascertain that he could safely cross in spite of the blind intersection.[3]
For the foregoing reasons, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of the defendant, New Orleans Public Belt Railroad, and against the plaintiff, Clarence Watts, dismissing plaintiff’s suit; costs in both courts to be paid by the plaintiff-appellee
Reversed.

. La., 273 So.2d 510.

. See Kavanaugh v. Travelers Insurance Company, La.App., 203 So.2d 780; Sule v. Missouri Pacific Railroad Company, La.App., 181 So.2d 280; Oliver v. Illinois Central Railroad Company, La.App., 135 So.2d 521.

. See Hymel v. Texas & New Orleans Railroad Company, La.App., 145 So.2d 138; Calvert Fire Ins. Co. v. Texas & P. Ry. Co., La. App., 55 So.2d 693.