**Leroy Warren KINCHEN, Plaintiff-Appellant,**

**and**

**North-West Insurance Co., Plaintiff-Intervenor-Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellee.**

No. 81–3262.

United States Court of Appeals, Fifth Circuit.

June 18, 1982.

Rehearing and Rehearing En Banc Denied Aug. 25, 1982.

C. John Caskey, David W. Robinson, Baton Rouge, La., for plaintiff-appellant.

Michael D. Meyer, New Orleans, La., for North-West Ins. Co.

C. Edgar Cloutier, New Orleans, La., for defendant-appellee.

Before WISDOM, RANDALL and TATE, Circuit Judges.

WISDOM, Circuit Judge:

Railroads are not always liable. Nor does every railroad-crossing case have to be submitted to the jury. This is one case when the facts are so clear that the integrity of the law requires this court to uphold the trial judge's decision to dismiss on a motion for a directed verdict.

Leroy Warren Kinchen appeals a district court order denying him compensation for personal injuries sustained when the defendant's railroad train struck the pickup truck he was driving. Under Louisiana law, a finding of contributory negligence bars recovery in a negligence action. We hold that the district judge properly granted the defendant's motion for a directed verdict. There was no evidence in the record from which a jury could reasonably find that Kinchen was not contributorily negligent.

I.

This is a truck-train collision case. The plaintiff/appellant, Leroy Warren Kinchen, is a citizen of Louisiana. About the time of the accident, he was working for L. A. G. Enterprises, at a construction site near the scene of the accident. The defendant/appellee, Missouri Pacific Railroad Company, is a Delaware Company, authorized to do business in the State of Louisiana.

The accident occurred at a railroad crossing near Addis, Louisiana. A railroad spur track, running from the Missouri Pacific track, provides service to a plant operated by the Custom Pipe Coating of Louisiana, Inc. The spur track parallels and is about 100 feet south of the Sid Richardson Road. A roadway from Sid Richardson Road crosses the spur track and gives access to the Custom Pipe Coating plant. Along this roadway, between Sid Richardson Road and the spur track, there is a fence with a gate.

In August 1979, Kinchen was employed as a strawboss of a tie-in crew of a pipe-laying gang employed by L. A. G. Enterprises, Inc. The company was laying a pipeline for Dow Chemical Company in the vicinity of the Custom Pipe Coating premises. The actual pipeline right-of-way intersected Sid Richardson Road and the spur track 75 to 80 yards west of the Custom Pipe Coating crossing.

On the evening before the accident, certain pipe-laying equipment had been left on the pipeline right-of-way 30 to 40 feet to as much as 50 yards south of the spur track. Kinchen's foreman asked him to act as a night watchman of the pipe-laying equipment left on location. On the night of

August 11, 1979, Kinchen entered the Custom Pipe Coating premises from Sid Richardson Road and closed the gate between that road and the spur track. There Kinchen took up his night watchman's position in his black pickup truck, in the area of the pipe-laying equipment, some 100 yards from the point where the Custom Pipe Coating access roadway crossed the spur track.

The following morning, before first light, Kinchen saw a car turn off of Sid Richardson Road and approach the gate across the Custom Pipe Coating entrance road. At the time Kinchen thought that the car was turning around; still, he went to investigate. Kinchen approached the spur track crossing through a field in his black truck using only his parking lights.

The car Kinchen was investigating had its lights on. He testified that the lights were shining through the gate and across the spur track. Kinchen was looking at the lights of the intruding vehicle when he entered the railroad crossing. He did not look left or right. At that very moment, the defendant's locomotive pushed a string of black, unlit hopper cars into the crossing and struck the right front door of Kinchen's truck.

No one on the train gave an audible or visual warning as it entered the crossing. Jerome Fair, a brakeman employed by the defendant, was riding on the lead hopper car as a lookout. He was equipped with a railroad lantern. There were no other lights on the forward end of the cut of cars. The rear headlight on the locomotive was illuminated. The cut of cars was being pushed at about eight to ten miles per hour.

The brakeman saw Kinchen's truck in front of the train when the distance separating the two was about 25 to 30 feet. He gave an emergency washout signal and jumped from his position on the lead hopper car. The brakeman was unaware whether the engineer had an opportunity to heed the washout signal before the collision. Later, he testified that he could not remember hearing the brakes being applied to the train prior to impact.

Kinchen suffered a ruptured disc as a result of the accident, and received medical treatment. He brought an action for personal injuries against Missouri Pacific Railroad Company. The defendant then filed a third-party complaint against Custom Pipe Coating of Louisiana, Inc. That complaint was predicated on a contractual provision that Custom Pipe Coating defend Missouri Pacific from any claims and indemnify it from any damages resulting from an accident at the crossing. Custom Pipe Coating and its insurer, Ranger Insurance Company, consented to a judgment against them on the third-party complaint. An insurer on behalf of Kinchen's employer, North-West Insurance Company, intervened to recoup benefits paid to Kinchen prior to trial for an amount exceeding $30,000.

On April 23, 1981, the case proceeded to trial before a jury. After the plaintiff presented his case, the defendant moved for a directed verdict on the issues of strict liability and contributory negligence. The trial judge granted the defendant's motion for directed verdict. He found that the record "conclusively showed that there was contributory negligence on the part of the plaintiff and that no finder of fact could reasonably conclude from the evidence in the record that he was not contributorily negligent. . . . And under Louisiana law a finding of contributory negligence bars that recovery. . . ."

Both Kinchen and the intervening insurance company perfected timely appeals. On appeal, Kinchen contends: First, that the district judge erred in weighing the evidence and in concluding that the plaintiff was contributorily negligent; second, that the district judge erred in granting a directed verdict on the issues of the doctrines of last clear chance, momentary forgetfulness, and rescue; and third, that the district judge erred in directing a verdict on the public versus private nature of the roadway line of the crossing.

II.

The crucial issue in this appeal is whether the district judge erred in finding that

there was no evidence from which a jury could reasonably conclude that Kinchen was not contributorily negligent. We have reviewed the record. We agree with the district judge.

The guidelines for granting a directed verdict are set forth in *Boeing Company v. Shipman*, 5 Cir. 1969, 411 F.2d 365:

On motion for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to that motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantive evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, motion should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantive evidence to create a jury question. However, it is the function of the jury as the traditional finder of facts, and not the Court, and determine the credibility of the witnesses.

411 F.2d at 374.

■ Kinchen submits that at trial there were gross differences in the testimonies of the plaintiff and the brakeman in certain instances. The brakeman, for example, testified that the plaintiff did not have his truck lights on at the time of the accident and that immediately after the accident the plaintiff told him that he had been asleep on the tracks and that the truck was sta-

tionary when the accident occurred. On the other hand, Kinchen testified that he was traveling at about three to five miles per hour at the time of the accident and that his parking lights were on. The plaintiff also relates the brakeman's statement of what the plaintiff told him immediately following the accident:

Q. Are you telling this jury, Mr. Fair, under oath, that Mr. Kinchen told you that he was asleep on the tracks and that the reason he did so was because he was waiting for his relief to come, and he thought he would get in trouble with his boss and get fired if he didn't lie about it, and he had just had his girlfriend out there and that she had just left, are you telling this jury under oath that Mr. Kinchen told you all of those things?

A. That is true. He did tell me that.

Kinchen argues that these differences in the testimonies of the plaintiff and the brakeman amount to a conflict in substantive evidence to create a jury question.

We disagree with the conclusion that these differences in testimonies amount to a conflict in substantive evidence. In fact, there was no conflict. Under the standard stated in *Boeing*, we must consider all of the evidence in the light and with all reasonable inferences most favorable to the non-moving party, here, Kinchen. We conclude that even if one accepts Kinchen's testimony of what occurred as true, there is no evidence to negate a finding of contributory negligence.

Kinchen, in fact, admitted his negligence during the trial:

Q. And in the course of making that drive you never looked either right or left to see if there was anything coming across that railroad track, is that right?

A. No, sir, I didn't look for nothing really but them highlights.

Q. And you knew that railroad track was there, didn't you, sir?

A. I knew it was there, but I didn't know I was on it. I didn't have my

mind on the railroad track at the time.

. . . . .

Q. You were not even paying enough attention to where you were going to even realize that you were entering on a railroad crossing?

A. No, sir, I wasn't.

. . . . .

Q. At no time in transversing that one hundred yards in going into that railroad crossing did you ever turn your headlights on, did you, sir?

A. No, sir, I never turned my headlights on.

Q. And you never looked to the right as you entered that crossing to see if the lights from that car parked at the gate were lighting up any railroad tracks or anything of that nature, is that right, sir?

A. No, sir, all I seen was them lights.

Kinchen testified that he was stationed about a hundred yards from the track, just before driving over to the crossing where the accident occurred. He also testified that he had crossed the train tracks at the place where the accident occurred on the day before the accident, to leave the plant grounds, and again on the evening before the accident to take up his nightwatch position.

The defendant presented testimony showing that there was a low humming noise continuously coming from a carbon black plant near the site of the accident. There might have been some chance that this noise could have affected the plaintiff's ability to hear the oncoming train. But the car windows were up and the radio was on, although low. This evidence, such as it was, was insufficient to justify the case being presented to the jury.

■ It is clear that a motorist has an obligation under Louisiana law to use his sight and hearing when approaching a railroad crossing. *Glisson v. Missouri Pacific Railroad Company*, 246 La. 470, 165 So.2d 289 (1964); *Theriot v. Texas and New Orle-*

*ans Railroad Company*, 220 So.2d 563 (La. App. 4 Cir. 1969), writ refused, 222 So.2d 886; *Howard v. Illinois Central Railroad Company*, M.D.La.1972, 349 F.Supp. 141. "A motorist . . . is bound to stop, look and listen for an approaching train by the statutory provisions of both L.R.S. 32:171 subd. A(3) and (4) and L.R.S. 45:563." *McCray v. Illinois Central Railroad Co.*, 244 So.2d 877, 880 (La.App. 1st Cir. 1971).

In Louisiana, contributory negligence bars recovery. *Thompson v. Morgan*, 167 La. 335, 119 So. 69 (1928); *Watts v. New Orleans Public Belt Railroad*, 287 So.2d 812 (La.App. 4th Cir. 1974). There is another line of cases in Louisiana which support the principle that contributory negligence is no bar to recovery for injuries unless it is the proximate cause thereof. *See, e.g., Galbraith v. Dreyfus*, 162 So. 246 (La.App. 2nd Cir. 1935); *Reeves v. Louisiana and Arkansas Railway Co.*, 282 So.2d 503 (La.1973). In this case, the district judge found: "And on the question of contributory negligence the Court is of the opinion that there is no evidence in the record from which anyone, any finder of fact, could reasonably conclude that there was not contributory negligence and that it was not a proximate cause of the accident."

Kinchen had an obligation to stop short of entering onto the railroad tracks. He testified that he did not do so, that he did not look for anything, although he was aware of the existence nearby of the railroad track. There is nothing in the record to take this case to the jury. The district judge, having found that there was no evidence for there to be a jury question on the plaintiff's contributory negligence, properly dismissed the plaintiff's case. He said:

And on the question of contributory negligence the Court is of the opinion that there is no evidence in the record from which anyone, any finder of fact, could reasonably conclude that there was not contributory negligence and that it was not a proximate cause of the accident.

### III.

The district judge was correct in granting defendant's motions for directed verdict

against the plaintiff's assertions that the doctrines of momentary forgetfulness, rescue, and last-clear-chance applied in this case.

The doctrine of momentary forgetfulness is inappropriate in this case. In Louisiana, the doctrine may have the following effect: "momentary forgetfulness may absolve one from the charge of contributory negligence where the danger is latent so as to not, of itself, to be a reminder of its existence to one coming within its presence..." *Delahoussaye v. City of New Iberia*, 35 So.2d 477, 480 (La.App. 1st Cir. 1948). But the doctrine is narrow in scope and applies only when there is evidence of circumstances reasonably sufficient to have diverted a plaintiff's mind from the danger in question. *Hailey v. LaSalle Parish Police Jury*, 302 So.2d 668 (La.App. 3rd Cir. 1975). There is no evidence to show that Kinchen was so engrossed in investigating the intruding automobile that it caused him to forget everything else. Here, reasonable men could not find sufficient evidence of diversion to justify Kinchen's contributory negligence.

Second, we agree with the district court that the rescue doctrine is inapplicable: There was nothing to rescue. The rescue doctrine is recognized in Louisiana. *Grigsby v. Coastal Marine Service of Texas, Inc.*, 5 Cir. 1969, 412 F.2d 1011, *cert. denied*, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531; *Gambino v. Lubel*, 190 So.2d 152 (La.App. 4th Cir. 1966). But the doctrine requires that a plaintiff exposes himself to danger in an effort to save a person or chattel from harm. Also, in doing so, a plaintiff must act in a reasonable manner. Restatement of Torts, Second, § 472 (1964). As the district court pointed out, there is no evidence that Kinchen thought the equipment was in danger or that his actions were reasonable under the circumstances. If the doctrine applies to rescue of equipment, which we would reject, the equipment was one hundred yards or more from the crossing where the accident occurred.

Third, we agree with the district court that the last-clear-chance doctrine cannot be applied: There was no evidence showing how long it would have taken the train to stop. The last-clear-chance doctrine has been applied in Louisiana to railroad train-automobile collisions. *O'Connor v. Chicago R. I. and P. Ry. Co.*, 40 So.2d 663 (La.App. 1st Cir. 1949). The plaintiff supports the application of this doctrine by presenting the brakeman's testimony that he was specifically placed on the rear of the train to watch for objects on the tracks and to protect the public. There is also evidence showing that the operating rules of the defendant railroad demanded that the train proceed at a reduced speed and that a warning bell be rung. Under Louisiana law, the last-clear-chance doctrine applies when the evidence shows that a plaintiff, through his negligence, places himself in a position of peril at a time and place when a defendant could have or should have discovered the peril and avoided the accident. The only pertinent evidence in the record on this point is the testimony of the brakeman that the plaintiff's truck was some 20 to 50 feet away when he first observed it. There is no evidence in the record as to how long it may have taken the train to stop or whether it could have been stopped in time to avoid the accident.

### IV.

On the issue whether the roadway crossing the spur track was private or public, we agree with the district judge's finding that there is no evidence that it was a public road. The district judge noted:

The question of the public or private road, the recollection of the Court is that there is not any real dispute as to whether or not this is a public or private road. It had a gate. The principal evidence was adduced through the testimony of the plaintiff that it was a gate. The road ran out just by the plant. It's an access road to the plant. There's no evidence that it was used by anyone other than employees or the plaintiff's employer in connection with this job. There's no evidence or not really converted at all that it was a matter of fact a public road.

On this point, the plaintiff cites this court's position that the public or private nature of a roadway is one for the jury: "for it is hornbook law that such questions of fact are peculiarly within the jury's province." *Burdis v. Texas and Pacific Railroad Co.*, 5 Cir. 1978, 569 F.2d 320, 323.

█ Also, Kinchen points to another source of the defendant's liability, namely, a licensing agreement. It is uncontroverted that when the crossing in question was constructed in 1978, the defendant railroad agreed with Custom Pipe Coating Company to post crossbuck signs to warn motorists of the presence of the crossing. That agreement required also that the defendant construct whistle posts to signal train crews that they were approaching a crossing. According to that agreement,

Licensee [Custom Pipe Coating] shall provide Crossing complete in place under supervision and to the satisfaction of Carrier, except Carrier . . . shall furnish and install crossing planks on each side and between the rails of Carrier's tracks and * * [here the standard form contract has added, typed in "cross buck signs and whistle posts"] raise, or cause to be raised, any interfering wire line for the lump sum of $400.

The licensing agreement provided also: "Carrier hereby grants and the Licensee hereby accepts permission to construct, maintain and use, and allow Licensee's officers, agents, employees, licensees and invitees to use, the herein defined Crossing, as a means of travel from one side to the other . . ." It is clear that Kinchen was in the class of person meant to cross the spur track under the licensing agreement as a licensee or an invitee. Hence, it can be argued that the safety measures described in the licensing agreement, including provisions for crossing planks, crossbucks, and whistle posts were meant to protect Kinchen from harm.

We conclude, however, that these provisions do not relieve Kinchen of his obligation to avoid being contributorily negligent, e.g. to stop short of the railroad tracks. Moreover, the Louisiana law specifically exempts a railroad from its duties to warn at spur tracks:

The provisions of R.S. 45:561 through 45:564 [Safety Regulations, including ringing a bell and blowing a whistle continuously from at least three hundred yards from the railroad crossing until the crossing is passed] shall not apply to (1) Crossings of public roads by house tracks, switch tracks, industry tracks and plantation tracks, since the intention is that such provisions apply only to tracks over which trains are operated at high speed . . .

We find nothing in the licensing agreement which obligated the defendant railroad to construct any physical barrier, such as a crossbar, to guard the motorist from the train and vice versa.

V.

There is one final issue here for appeal, namely, whether the plaintiff's claim based upon strict liability for a defective vehicle under Louisiana Civil Code 2317 has any basis. At the conclusion of the plaintiff's presentation of his case, the defendant moved for a direct verdict on the issue of strict liability. The district court granted the railroad's motion to dismiss with assigning reasons. The court acted properly. The plaintiff failed to make a case to support a claim for strict liability under Article 2317 of the Louisiana Civil Code.

The plaintiff notes that one of his causes of action was strict liability on a basis of a defective vehicle as recognized by Article 2317 of the Louisiana Civil Code. Article 2317 provides:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody . . .

The plaintiff then states that the Louisiana Supreme Court has recognized strict liability for owners or custodians of defective automobiles causing injury to another in *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1979). He contends that there is no theoretical basis for exempting trains from

this same basis of liability. He argues that the evidence shows that the train was defective in this case: The defendant's railroad's operating rules required red lights at the rear of the train, and there were no such rear lights. The brakeman on the rear of the train testified that walkie-talkies were required equipment if the rear brakeman were ever to lose eye contract with the engineer, and there evidently were no walkie-talkies on the train. And the defendant's own operating rules indicate that some of the defendant's engines are equipped with red oscillating lights for use in pushing unlighted cars, but there were no such lights on the engine involved in the accident sued upon herein. From this evidence the plaintiff concludes that the defendant's train simply was not properly equipped to carry out its function, thereby giving rise to an Article 2317 claim.

We disagree with this contention. First, we do not conclude as the plaintiff does that even if the evidence presented were true (as we assume in reviewing a motion for directed verdict), that the defendant's train was ill-equipped and therefore defective. Second, even if it were defective, we do not read the *Arceneaux* case to state a general principle of strict liability in tort. Instead, we find no case under Article 2317 supportive of the plaintiff's position. There is no evidence that a defect in the train itself caused the accident. *See Gasquet v. Commercial Union Insurance Company*, 391 So.2d 466 (La.App. 4th Cir. 1980) writ refused, 396 So.2d 921 (where the court held that Article 2317 was inapplicable when the operator of an airboat was negligent, but when there was no defect in the airboat which caused the accident). Third, it is not merely the occurrence of the accident which calls Article 2317 into play against the custodian of an instrumentality involved. The plaintiff failed to present evidence to show that the defect, if any, was the cause of the accident. *Sessums v. Louisiana Power & Light Co.*, 652 F.2d 579 (1981); *Naquin v. Maryland Casualty Co.*, 311 So.2d 48 (La.App. 3rd Cir. 1975).

We hold, therefore, that the district court was correct in granting the defendant's motions for a directed verdict.

We AFFIRM the district court's decision in this case.

TATE, Circuit Judge, dissenting.

I respectfully dissent insofar as the majority holds that the plaintiff Kinchen was contributorily negligent as a matter of law. With great respect for the able trial judge and for my esteemed colleagues of the majority, the upholding of the directed verdict and the depriving of the jury of its function to determine this factual question are in contravention of the principles of *Boeing v. Shipman*, 411 F.2d 365 (5th Cir. 1969), quoted but ignored by the majority.

In substance, the majority accepts the facts relied upon by Kinchen: The train (a locomotive and four carbon-black cars) backed toward the spur-track crossing of the roadway without audible warning. In these very dark early-morning hours, there were no lights to indicate the approach of the train or the location of the tracks at the crossing. In contravention of law and contract, there was no railroad cross-buck sign to alert the oncoming motorist of the location of the railroad track across the crossing. The railroad did not signal its approach with bells or whistles, nor did any headlight illuminate its path as it backed toward the crossing.

The majority holds that Kinchen was contributorily negligent as a matter of law because (1) he did not stop before entering the railroad crossing and (2) he did not look or listen for the invisible and inaudible train. Kinchen (a temporary construction worker at the site) was serving for the first time as night watchman on this brief tour of duty at the site. He indeed knew that *somewhere* in the three hundred feet of roadway ahead of him there was a railroad track crossing (because he had passed it two or three times during the daytime). However, in the absence of the cross-buck sign (required both by law, La.R.S. 45:562, and by a particular contract between the landowner and the railroad company, see Exhib-

it P–8), he was not alerted to just *where* ahead on the dark roadway was the railroad crossing. Further, the record is devoid of evidence as to how often a train used this spur-track in the nighttime, and so far as the record shows Kinchen had never seen a railroad on that unfenced spur-track.

As will be shown more fully below, under Louisiana authority, Kinchen's conduct did not constitute contributory negligence as a matter of law.

The majority in effect holds that any time a motorist approaches an unmarked railroad crossing (unmarked in violation of law) and fails to look and listen for an unlighted and inaudible train, the motorist is contributorily negligent, if sometime during his brief prior acquaintance with the area he had become aware that a railroad track crossed the roadway somewhere in front of him, but nevertheless does not constantly look for the (unmarked) crossing and look and listen for the silent and darkened train. The rule evoked by the majority apparently applies no matter how dark the night, how unexpected or occasional a train might be at the time and place of the accident, how grossly negligent and unforeseeable the conduct of the railroad. This is simply not the current law of Louisiana; I doubt that it is the modern law of any other American jurisdiction.

In the first place, the more recent Louisiana decisions emphasize that whether the failure of an oncoming motorist to observe a railroad approaching to or in a crossing constitutes contributory negligence is an issue of fact that should be judged upon all the facts and circumstances surrounding the collision, not subject to hard and fast (*e.g.*, "stop, look, and listen") rules that may be obsolete in the light of modern train crossing conditions. *Odom v. Hooper*, 273 So.2d 510, 514–15 (La.1973); *Troxlair v. Illinois Central Railroad Co.*, 291 So.2d 797 (La.App. 4th Cir. 1974), *cert. denied*, 294 So.2d 834 (La.1974); *Beal v. Kansas City Southern Railway Co.*, 291 So.2d 510 (La. App. 2d Cir. 1974). Further, in determining whether the motorist is contributorily negligent, the finder of fact may take into con-

sideration that the railroad's grossly negligent conduct in utter disregard of crossing traffic may not be foreseeable by the motorist. *Reeves v. Louisiana and Arkansas Railway Co.*, 282 So.2d 503, 509–510 (La. 1973).

The utter-disregard negligence of the railroad defendant is clear. It has long been recognized in Louisiana that a train *backing* at *night* is grossly negligent with regard to a person injured in a crossing accident if the train does not have adequate rear lighting or flagman or lookout to alert crossing traffic of the unusual hazard presented. *Maher v. Louisiana Ry. & Nav. Co.*, 145 La. 733, 82 So. 872 (1919). (In holding the plaintiff free of contributory negligence, the court commented: "He had a right to believe, and to act upon the belief, that the railroad company would have some regard for the safety of the public." 145 La. at 738, 82 So. at 874.) *See also Dobrowski v. Holloway Gravel Co.*, 173 So. 474 (La.App. 1st Cir. 1937) ("[I]t is recognized as much more dangerous to back a string of cars from out the darkness onto the highway without lights on the lead car, or a flagman stationed at the crossing to warn motorists. It is gross negligence to back a string of cars at night over a public crossing without lights or proper warning signals." 173 So. at 276.); *Robertson v. Missouri Pac. R.R. Co.*, 165 So. 527, reh. den., 167 So. 165 (La.App. 1st Cir. 1936).

As to the present motorist's alleged contributory negligence in failing to stop, look, and listen as in the pitch-dark night he approached the crossing: In a decision of this circuit authored by the late Judge Ainsworth, we summarized the obligations of the railroad company at a crossing of a road open to public use. *Burdis v. Texas & Pacific Ry. Co.*, 569 F.2d 320, 322 (5th Cir. 1978), citing Louisiana jurisprudence as well as La.R.S. 45:562 (duty to maintain a crossbuck sign to alert motorists of railroad crossing). The duty of a motorist to stop not less than ten feet or more than fifty feet before a railroad crossing and to look for approaching trains, La.R.S. 45:563, must be read in conjunction with this preceding

statutory section. I am unable to see how Kinchen was under a duty to stop and look (for a nigh-invisible train), when in violation of law and contract the crossing was not marked by a cross-buck sign (that, if properly placed, would have been observable to him by the headlights of the opposite-bound vehicle if not by the reflection of his own parking lights), simply because from his prior casual observation during his brief stay at the worksite he knew that somewhere in the three hundred feet of roadway ahead of him there was a railroad crossing.

Under the law of Louisiana (and elsewhere), contributory negligence is conduct on the part of a plaintiff that falls below the standard to which he should conform for his own protection as "a reasonable man under like circumstances," and "[f]ailure to take *every* precaution against *every* foreseeable risk" does not constitute contributory negligence. *Smolinski v. Taulli*, 276 So.2d 286 (La.1973) (emphasis in original).

It is difficult for me to believe that any court sitting in 1982 America could hold that Kinchen *as a matter of law* acted unreasonably with regard to his own safety under present circumstances by not stopping (where? constantly?) to look for a track and a railroad, as he—working as a night watchman at a deserted worksite in the dark hours of the night—drove on the roadway keeping his eyes on the headlights of the vehicle at the gate putatively bent on trespass or theft. Other relevant circumstances include: the railroad company, in complete violation of statute and contract, had unforeseeably failed to signal either the existence of the crossing or the approach of its backing train; so far as the record shows, this spur-track was infrequently used by a train during the nighttime; Kinchen had never seen a train use the track either during the daytime or nighttime during his few days working in the general area.

The totality of these circumstances to me indicates that Kinchen's inattentiveness to the possibility of a railroad presents a genuine jury issue as to whether his conduct was *unreasonably* in disregard of his own safety, so as to bar his recovery by reason of contributory negligence—a defense that the defendant had the burden of proving.

I therefore dissent from the decision of the majority because it takes from the jury, the trier of fact, the decision whether Kinchen's conduct under the particular circumstances of this accident was so unreasonably in disregard of his own safety as to constitute contributory negligence as a matter of law.