LOTTINGER, Judge.
This is a suit for personal injuries arising out of a car-train collision. Petitioner is Dianne Ridge, who was a guest passenger riding in the automobile, and named as defendants were August J. Beyl, the driver of the automobile, Lambert Stelly, Beyl’s employer, the Illinois Central Railroad, owner of the train, and the City of Baton Rouge. The defendant, City of Baton Rouge, filed an exception of no cause of action which was maintained by the Lower Court and the suit as against the City was dismissed. The Lower Court awarded judgment in favor of petitioner and against defendants, August J. Beyl and Illinois Central Railroad Company. Appeals have been taken by defendants, Beyl and Illinois Central Railroad Company.
The present case was consolidated with another case, No. 7710 on the docket of this Court entitled Prescott v. Illinois Central Railroad Co., La.App., 225 So.2d 707. In the companion suit Aaron Prescott was awarded a judgment against Beyl and Illinois Central Railroad Company, and the two defendants cast in judgment have also filed appeals therein.
*705 The two cases were consolidated for the purposes of the trial below, and, although one reason for judgment was rendered by the Lower Court, separate judgments were given in each suit. Both suits will he treated in this opinion, however, separate judgments will be rendered.
The record discloses that at approximately 10:00 o’clock p. m. on June 21, 1966, Aaron Prescott and Dianne Ridge were accompanying August J. Beyl in his 1961 Chevrolet automobile traveling in a southerly direction on Wooddale Boulevard in the City of Baton Rouge. Wooddale is a four-lane street running generally in a north-south direction and is of a black topped surface. At a point just before it crosses the railroad, Wooddale turns at an angle in a northeasterly direction to its intersection some distance north with the Greenwell Springs Road. No automatic or flashing lights or devices guard the railroad crossing, but two of the usual Louisiana Railroad crossing signs are located north of the crossing on the west side of the two southbound lanes.
The testimony indicates that Beyl turned off from Greenwell Springs Road and was proceeding south on Wooddale in the inside lane of traffic at a speed of approximately thirty miles per hour.
Richard Peters, who testified upon trial below, testified that he was stopped, headed south in the inside lane of traffic, waiting for a freight train to pass at the crossing when he heard Beyl’s car coming up from the rear. He recalled it skidded to his right and into the train a few feet off the western side of the pavement. According to his testimony, the Beyl car appeared to be traveling at a speed of some twenty-five to thirty miles per hour when it passed the window of his car. Apparently Beyl’s automobile struck the 24th car of the 29 unit freight train which was proceeding at five to ten miles per hour in an easterly direction. According to the train employees, no flagman was used at this crossing, however, as is required by Louisiana law, the engineer sounded the whistle and bell prior to entering the crossing as required by R.S. 45:561.
The petitioners seek to hold Beyl negligent in failing to be on a proper lookout. The responsibility of the Illinois Central is laid at its alleged neglect in not providing suitable warnings in the form of flashing or automatic signals at the crossing. Finally, Stelly is named a defendant on the theory that at the time of the accident, Beyl was working within the scope and course of his employment with Stelly.
James Carl Neese, Jr. testified on behalf of petitioners that he was stopped for the train on the opposite side of the track from which the Peters car was proceeding. He was the first car stopped in the left northbound lane and there was a truck on the right lane on his side of the track. He testified that as he approached the railroad track at the intersection, the train was not clearly visible to him at first. However, the truck lights were flashing on the train and as he got closer to it, it was more visible. He stated that after he had stopped for a few seconds, he heard the brakes of the Beyl car on the other side and saw the lights going to his left and heard the collision with the train. He stated that there were street lights in the neighborhood, however, they were not very bright.
Richard Dallas Peters testified that as he was approaching the crossing in a southerly direction the train was not at first clearly visible to him as it was a very dark night. He stated that the first he noticed of the train was when a car approached from the other side or had been parked on the other side and he saw the lights flicker off and on in between the cars. Mr. Peters testified that he was stopped approximately twenty feet from the train with his headlights shining on the train at the time of the accident. He did not know, however, whether his headlights were on high or low beam.
*706 The Lower Court held that, in view of the nature of the crossing and extraordinary dangers presented, the Illinois Central Railroad failed to provide adequate or sufficient warning devices at the Wooddale crossing to properly appraise vehicular traffic and this failure constituted negligence and is a concurrent cause in fact of the accident.
We are unable, however, to determine from the written reasons under what theory the Lower Court held Beyl’s negligence to be a contributing factor to the accident. Although the Court recognized that a major portion of the testimony offered by the defendants centered upon the vast amount of alcoholic consumption of Beyl and the plaintiffs on the night prior to the accident, it appears that the Court discounted this evidence as being supplied by Beyl for the purposes of showing that he was so intoxicated that the plaintiffs were contributorily negligent in riding with him. Both petitioners, while admitting that they each, together with Beyl, had some three or four drinks during the activities prior to the accident, denied that anyone was intoxicated or that Beyl’s driving was adversely affected by what he had been drinking.
The Lower Court seemed to hold that Beyl was accustomed to drinking substantial amounts and on the night in question the quantities consumed did not play such a significant role in his driving as to give proof of or support his contention that his passengers were well aware of his intoxicated condition and assumed whatever risk obtained by this condition. Yet, after so holding, the Lower Court did cast Beyl in damages.
On the contrary, Beyl himself testified that during the evening and night preceding the accident, he had consumed at least eight to twelve drinks of Cutty Sark and soda, most of them doubles. In support of this contention, Hazel Lemon, who was employed at the Cajan Lounge, which is the last stop made by Beyl and his guest passengers just a short time prior to the unfortunate accident, testified on behalf of defendant. She testified that Beyl and petitioners came to the place and ordered drinks, that Mr. Prescott had a Budweiser, Miss Ridge had a VO and coke, and Mr. Beyl had a Cutty Sark and soda. She testified that Mr. Beyl ordered a double scotch, but that she only gave him a single one because she thought he had had enough to drink already. She testified that she had been knowing Mr. Beyl quite a while and that she could determine whether or not he had been drinking. Miss Lemon testified that both Beyl and Prescott had been in during the early afternoon and had had something to drink at that time.
Of course, in this case, as in others, the burden of proving the demand is on the petitioners, and we do not feel that the petitioners have sustained that burden. We feel this way because first of all they have not shown that there was any negligence on the part of the railroad company in its failure to provide more adequate safety precautions at this particular crossing which constituted a proximate cause of the accident. It strikes us as rather odd that one truck and two cars had previously noticed the passing train and came to a stop without striking it. Then the car occupied by Beyl and his companions, who had been on a drinking spree, came along and first ran off the road to avoid striking the parked Peters car, whose lights were on and burning, and then traveled off the road a distance of some thirty feet before striking the train. It appears to us that the cause of this accident was the condition of Beyl in his failure or inability to' see what he should have seen in time to avoid striking the train.
The evidence indicates to us that the inebriation of Beyl was of such extent as to put his passengers on their guard and, because of such fact, they assumed the risk of his negligent actions and must pay the consequences.
For the reasons hereinabove assigned, the judgment of the Lower Court will be *707 reversed, and there will be judgment herein in favor of defendants and against petitioner dismissing petitioner’s demand at petitioner’s costs.
Judgment reversed.