244 So.2d 877 (1971)
Marian Elaine McCRAY et al., Plaintiffs-Appellants,
v.
ILLINOIS CENTRAL RAILWAY COMPANY, Defendants-Appellees.
No. 8163.
Court of Appeal of Louisiana, First Circuit.
February 1, 1971.
Rehearing Denied March 15, 1971.
*878 J. David McNeill, III, and Robert S. Cooper, Jr., Baton Rouge, for appellants.
Henry D. Salassi, Jr., of Breazeale, Sachse & Wilson, Boris F. Navratil, of Breazeale, Sachse & Wilson, Baton Rouge, for appellees.
Before LOTTINGER, SARTAIN and PICKETT, JJ.
SARTAIN, Judge.
Plaintiffs Marian Elaine McCray and Betty Lou Freeman were passengers in a 1956 Plymouth station wagon driven by defendant Willie Britton and were injured when the car was involved in an accident with a train owned and operated by the defendant Illinois Central Railway Company within the city limits of Baton Rouge. The City of Baton Rouge was dismissed from the suit on its exception of no cause of action and that ruling is not appealed.
At the trial on the merits, the court found that the sole cause of the accident was the negligence of Willie Britton and dismissed the suit as to Illinois Central. Britton did not file an answer and was not represented by counsel at trial. The court rendered a default judgment against him in favor of plaintiff McCray in the amount of $1,832.50 and in favor of plaintiff Freeman in the amount of $4,020.00. Britton has neither appealed from that judgment nor answered plaintiffs' appeal.
Plaintiffs have appealed contending that the trial court erred in failing to find any negligence on the part of the Illinois Central *879 train which was at least a contributing cause of the accident. They also contend that the amounts of the awards made are insufficient to compensate plaintiffs for their respective injuries.
We do not find error with respect to liability but we do amend as to quantum as hereinafter shown.
The accident occurred at about 6:00 p. m. on December 4, 1966, at the intersection or crossing of Wooddale Boulevard and the Illinois Central tracks in the City of Baton Rouge. The tracks run generally east and west at that point and are perpendicular to Wooddale Boulevard which runs generally north and south. Wooddale Boulevard is a four-lane paved thoroughfare with the two north-bound lanes separated from the two south-bound lanes, each a total of twenty-two feet wide, by a grasscovered neutral ground thirty-two feet wide. At the time of the accident, it was dark and misting or drizzling rain. Defendant Britton was driving in the left or inside lane for north-bound traffic at a speed of thirty to thirty-five miles per hour with his windshield wipers operating and windows rolled up. The speed limit on Wooddale Boulevard was forty miles per hour.
The train was traveling eastward at a speed of about eighteen to twenty miles per hour. Section 1 of Chapter 1 of Title 10 of the Baton Rouge City Code provides as follows:
"No railroad train shall be run within the limits of the City of Baton Rouge, whether freight or passenger train, at a greater rate of speed than eight (8) miles per hour."
The record discloses that a tree line on the west side of Wooddale Boulevard and on the south side of the tracks to some extent obstructed a north-bound motorist's view of the east-bound train and similarly blocked an engineer's view of the northbound automobile traffic. The testimony in the instant case, however, revealed that the train's engineer saw Britton's car when the train was about two hundred to two hundred thirty feet from the crossing and that Britton saw the train when he was about two hundred feet from the crossing, inasmuch as his car left skid marks of one hundred fifty feet and some fifty feet, it was estimated, would have been covered during his reaction time. There was other testimony that a motorist within one hundred feet of the tracks could see several hundred feet westward down the tracks and that from a point about fifteen feet from the tracks the view westward was almost unlimited.
For north-bound traffic on Wooddale Boulevard, there were two round yellow warning signs about six hundred feet south of the crossing, on either side of the north-bound lanes, and there was the familiar white "cross-buck" warning sign with the words "RAILROAD CROSSING" about twenty-two feet south of the track. There were no automatic signals or lights and the train crew did not use any flares or flagmen for this crossing. The train's engineer testified, and it was corroborated without contradiction, that his headlight was on, that he blew the train's whistle and rang the train's bell, which Britton said he never heard, constantly from a point five hundred feet west of the intersection and that, after he saw Britton and realized that the latter would not or could not stop in time, he then gave the emergency whistle and commenced emergency braking action. Nevertheless, the car struck the train's engine about fifteen or twenty feet from its front end.
These facts are not seriously contested but there is substantial disagreement over the legal conclusions drawn from them by the trial court.
Plaintiffs urge that the liability of Illinois Central has been proved on two legal grounds: (1) violation of the speed ordinance, designed to prevent accidents, proof of which constitutes a prima facie case; and (2) the crossing involved was a ultrahazardous *880 crossing, based on the obstructed view and knowledge of prior accidents at the crossing, which would impose a duty on the railway company to use automatic signal devices, flares, flagmen, or some other means to provide an additional warning to motorists.
The defendant Illinois Central answers that the speed ordinance, which was adopted in 1909 and has never been amended, is unreasonable, obsolete and unenforced, so that its violation should not be construed as constituting per se a prima facie case of negligence which Illinois Central would be required to rebut. In support of this contention, defendant points to the stipulation of counsel that, if called to testify, the Baton Rouge Chief of Police, Eddie O. Bauer, would testify that the ordinance had never been enforced under his administration by law enforcement officials. The engineer testified that he understood from a reading of his company's regulations that the speed limit was thirty miles per hour. We are also referred to the case of Matlock v. State, (1st La.App.1941) 4 So.2d 90 (writs refused), in which violation of a 1916 automobile speed ordinance was disregarded by the court as proof of contributory negligence of the driver. The ordinance of the town of Abita Springs set a maximum speed of twelve miles per hour and required a reduction to seven miles per hour at street and alley crossings. That ordinance was not enforced by the local authorities, and the court did not feel justified in invoking its provisions to bar the driver's recovery. Rather, the court decided that issue on the basis of reasonable speed under the particular circumstances and whether the driver's conduct was a proximate cause of the accident.
We are of the opinion that the ordinance in the instant case should be evaluated in the same light and when so examined it would be unreasonable to accord it any weight on the question of Illinois Central's negligence. This is not to say that an ordinance is obsolete merely because of its age or that the governing body of a municipality may not validly enact an ordinance requiring low speed, but we do mean that the courts should not be bound to apply the provisions of an old ordinance which the municipality itself or its police authority has long since ignored and chosen not to enforce. It thus devolves upon plaintiffs to prove by a preponderance of evidence that the train's speed was unreasonable under the circumstances and was a contributing proximate cause of the accident.
Plaintiffs argue that since the engineer and Britton saw each other at approximately the same time and at approximately the same distance from the point of collision it is illogical and inconsistent to find Britton negligent and the engineer free from negligence, since the emergency braking action of each could not stop his respective conveyance before the point of collision. This position erroneously assumes that the duty of an engineer and the duty of a motorist to avoid such an accident are the same.
However, a motorist under the facts of the instant case is bound to stop, look and listen for an approaching train by the statutory provisions of both L.R.S. 32:171 subd. A. (3) and (4) and L.R.S. 45:563. There is no such statutory provision requiring a train to stop, look and listen for approaching automobiles or even to be able to stop before reaching an intersection unless there is an apparent hazard or obstruction on the tracks and the train crew realize or should realize that an accident would necessarily result. On the contrary, the train is only required to give the audible warnings of its bell and whistle under the provisions L.R.S. 45:561. Furthermore, the engineer may assume that a motorist will operate his automobile in a manner consistent with the duty imposed by the cited statutes. See, for example, Theriot v. Texas & N.O.R. Co., 220 So.2d 563 (4th La.App.1969), writ refused, 254 La. 142, 222 So.2d 886; Parks v. Texas Pacific-Missouri Pacific Terminal R.R. of New Orleans, 152 So.2d 845 (4th La.App. 1963). *881 The Theriot case also recognized that a motorist is bound to use his senses of sight and hearing and is responsible for seeing and hearing that which he could have seen and heard.
In the instant case, the driver Britton did not hear the audible warnings and was clearly driving too fast at a distance of two hundred feet from the tracks, when he first saw the train, to bring his car to a stop. He tried to do so and could not. As soon as the engineer realized that Britton could not stop, he commenced emergency action to stop the train. Under the law and facts of this case, we agree with the trial judge that the inability of the engineer to stop the train prior to the point of the collision was not the proximate cause of the accident.
Plaintiffs argue, however, that the general rules governing the motorist's duty of lookout are inapplicable because the crossing was extrahazardous. This position is based on the fact that the railroad knew several accidents had previously occurred at that crossing and on the fact of the tree line obstructing the north-bound motorist's view to the west. It is true that where a crossing is shown to be extrahazardous the railroad must take additional steps to warn motorists of an approaching train. But we are not persuaded that the crossing in the instant case falls within the jurisprudential definition of "extrahazardous". While several accidents had previously occurred at the same crossing, it was not established that the railroad was responsible for them. In fact, this court in Ridge v. Illinois Central Railroad Company, 225 So.2d 704 (1st La.App.1969), reversed the finding of the lower court that the same crossing was hazardous and placed the sole responsibility for the accident on the motorist. The Ridge case differs in several factual respects from the instant case and we do not rely on that decision in finding the motorist Britton alone at fault. But the fact of the prior accident involved in Ridge cannot per se support plaintiffs' argument that the knowledge of such an accident places an additional duty on the railroad. Nor are we convinced that the obstruction of view by the tree line was so severe as to make this crossing extrahazardous or a "dangerous trap" within the meaning of that doctrine. That doctrine may be applied where the physical circumstances are such that stopping, looking and listening will do the motorist no good or that he must place himself in a perilous position to discover an approaching train. Glisson v. Missouri Pacific R. Co., 158 So.2d 875 (3rd La.App. 875), affirmed 246 La. 470, 165 So.2d 289; Bertrand v. Missouri Pacific R. Co., 160 So.2d 19 (3rd La.App.1964), writ refused 245 La. 1075, 162 So.2d 571. There is ample evidence in the instant case to show that, as a north-bound motorist neared the crossing, his view to the west became almost unlimited. Comparable distances relative to view were held not to constitute a dangerous trap in the Theriot case, supra.
Therefore, we conclude on the issue of liability that plaintiffs have failed to prove negligence on the part of Illinois Central which was a contributing cause of the accident involved herein.
Lastly, plaintiffs urge that the amounts of the judgments against Britton were inadequate.
The trial judge summarized his findings relative to the personal injuries of the two plaintiffs in the reasons for judgment. Marian E. McCray saw her doctor forty-eight times following the accident with the last visit on January 30, 1969, although she was formally discharged on June 5, 1967, six months after the accident. She had a large hematoma, about four inches by four inches, on her forehead, several cuts and abrasions on her legs and complaints of pain in eyes and right shoulder. However, the doctor prescribed only heat and relaxants. As to plaintiff McCray, we find that the award of $1,832.50, including a doctor's bill of $280.00 and a hospital bill of $52.50, is adequate.
*882 However, plaintiff Betty Lou Freeman received much more serious injuries. She had three of her teeth knocked out and eight other teeth had to be removed. Her jawbones were broken in several places and had to be wired together. For months she was fed through a straw and endured considerable pain. She had temporary dental plates made and faced the necessity of have permanent plates made. She was not discharged until March 22, 1967. We do not think that the total award of $4,020.00 is adequate compensation for such injuries and amend the judgment against defendant Britton in her favor to the sum of $8,020.00, including all of her ambulance, hospital, medical and dental expenses. See, for example, Roberts v. City of Baton Rouge, 238 So.2d 203 (1st La.App.1970), in which $5,000.00 was awarded for a broken jaw.
For the above and foregoing reasons, the judgment of the lower court is amended only with respect to the amount of the judgment against Willie Britton and in favor of Betty Lou Freeman and is in all other respects affirmed, at plaintiffs-appellants' costs.
Amended and affirmed.