FRUGÉ, Judge.
This is a suit for damages for personal injuries. Plaintiff was. a passenger in a truck which was struck at a crossing by a train of defendant, Missouri Pacific Railroad Company. From an adverse judgment, plaintiff appealed.
This accident occurred at about 2:00 P. M. on July 9, 1970, at a railroad crossing provided with electrical automatic signal flashers. The vehicle in which the plaintiff was riding was a double-axle tandem truck loaded with a minimum of 11,500 pounds. The truck was traveling in a westerly direction on U. S. Highway 90, and collided with the caboose of a Missouri Pacific train being backed in a southerly direction across the highway.
The train involved was comprised of an engine, seven freight cars, and a caboose. The train was manned by a crew of four, positioned as follows: J. L. Cookes, rear brakeman on the lead end of the caboose *484 platform; Roy A. Cole, head brakeman on the east side of a car approximately in the middle of the train; Thomas Jarona, conductor, in the fireman’s seat on the east side of the engine cab; and Joe M. Clegg, engineer, in the engineer’s seat on the west side of the engine cab.
Plaintiff has sought to establish that inadequate warnings were given in advance of the train’s crossing. It is the plaintiff’s testimony that there were no signal lights flashing and that there was no train whistle. Plaintiff’s witness, driver Shirley Cas-tille, likewise testified that the red flashing signals were not working and that he had commenced to slow down to a point 250 to 300 feet from the railroad track. Mr. Cas-tille testified that the caboose was 80 to 100 feet from the highway when he first saw it. At a time when he was approximately 75 to 100 feet from the crossing, he heard a bell, whistle, or horn, and at the same moment applied his brakes.
Mr. Castille testified that he thought he could stop the truck before reaching the track, but that the truck did not stop and this was, perhaps, because of the big load. He also stated that if he had had no load, he could have stopped.
Much evidence is directed toward the activity of the railroad crew prior to the accident. The plaintiff stated that he did not see the brakeman, J. L. Cookes, approach the highway on foot, but did see him riding on the caboose immediately prior to the accident. It is the plaintiff’s position that if the brakeman had approached on foot, in advance of the train’s movement, he could have seen the truck, stopped the train, and avoided the accident.
The record discloses that the railroad crossing in question is not obstructed to a motorist’s view for several hundred feet in advance of the crossing. A railroad warning sign is positioned on the highway approximately 500 feet before the crossing. The relative speeds of the vehicles were slow, that of the truck being 15 to 20 miles per hour, and that of the train 2 to 4 miles per hour prior to the time of impact.
Mr. Hubert Richard, while driving an automobile behind the plaintiff’s truck, witnessed its approach to the accident site. Mr. Richard stated that he never noticed the railroad signal flashers prior to the accident and did not see the train until it was approximately 75 to 100 feet from the crossing. His car windows were down, but he never heard any whistle prior to the accident’s occurrence. He did hear a bell after the accident. He saw a railroad workman on the caboose steps who jumped off when the caboose got to the highway, but never saw the workman act as a flagman.
Testimony adduced for the defense established the following summary of events prior to the catastrophe. Four train crewmen occupied positions on the train. J. L. Cookes, the rear brakeman, occupying a position on the lead end of the caboose, commenced sounding an air whistle at a point about 300 feet from the crossing. This whistle was blown with intermittent blasts during the course of the train’s backing maneuvers.
Although it initially traveled approximately 8 to 10 miles per hour, upon directions given by Mr. Cookes, the engineer reduced the speed of the train to approximately 2 to 4 miles per hour as the crossing was approached. In advance of the crossing (the exact distance not being established with absolute certainty by the record), Mr. Cookes dismounted from the lead end of the caboose and walked toward the highway. The automatic flasher signals were found to be operating and, accordingly, the engineer was signalled to continue forward by way of an “easy ahead” signal.
The testimony of Mr. Cookes was generally corroborated by the other crew members. Mr. Cookes first saw plaintiff’s ve- *485 hide coming around a curve approximately 200 to 300 feet distant. He was not alerted to the impending disaster until the truck was 75 to 100 feet from the crossing and veered suddenly to the left lane of the highway. Until this point in time there was nothing so unusual about the truck’s approach as to place an ordinarily prudent man on notice. Mr. Cookes then jumped back upon the train and activated the train’s emergency braking system by using the conductor valve located on the lead end of the caboose. He had not activated the braking system before this time because he assumed the truck would stop in time.
Testimony of other railroad personnel evidenced the following. Signal maintainer, Jessie J. Young, arrived three to four hours subsequent to the accident and examined the signal circuitry of the track and found the flashing lights to be operating perfectly. No repairs to the signals were necessary except to raise one signal which the caboose had struck during the accident.
The insulated joints of the signal circuitry extended north of the crossing some 563 feet. This would have placed the train well within the signal circuitry, thereby activating the signals, well before the caboose reached the highway crossing. Mr. Young testified' that the crew could observe if the signals were working, up and down the track from the crossing, due to the design of the signal casings. His testimony also revealed that the signal lights and bells worked together, and that one device could not work without the other. The lights normally operated on a 110-volt circuit, and if it failed the lights would work on battery power.
The railroad signal engineer and communications supervisor, Arthur Callaway, testified that equipment at the crossing complied with the American Association of Railroad standards, and that the signals operated under a “fail safe” system.
In evaluating the conduct of Mr. Cookes in braking the train to a halt, we note the testimony of Mr. William D. York, a master mechanic, who testified on behalf of the defense. It was his opinion that at the speed this train was traveling, the train could not have been stopped any more effectively by any other system than by the brakeman activating the emergency braking system from the caboose. The train’s forward motion could not have been stopped any more suddenly by the use of signals to the engineer.
We have found the following excerpt from the case of McCray v. Illinois Central Railway Company, 244 So.2d 877, 880, 881 (La.App.1st Cir. 1971), to best express our own sentiments in the instant matter.
“ . . .a motorist under the facts of the instant case is bound to stop, look and listen for an approaching train by the statutory provisions of both L.R.S. 32:171 subd. A. (3) and (4) and L.R.S. 45:563. There is no such statutory provision requiring a train to stop, look and listen for approaching automobiles or even to be able to stop before reaching an intersection unless there is an apparent hazard or obstruction on the tracks and the train crew realize or should realize that an accident would necessarily result. On the contrary, the train is only required to give the audible warnings of its bell and whistle under the provisions of L.R.S. 45:561. Furthermore, the engineer may assume that a motorist will operate his automobile in a manner consistent with the duty imposed by the cited statutes. See, for example, Theriot v. Texas & N. O. R. Co., 220 So.2d 563 (4th La.App. 1969), writ refused, 254 La. 142, 222 So.2d 886; Parks v. Texas Pacific-Missouri Pacific Terminal R. R. of New Orleans, 152 So. 2d 845 (4th La.App. 1963). The Theriot case also recognized that a motorist is bound to use his senses of sight and hearing and is responsible for seeing and hearing that which he could have seen and heard.”
*486 We conclude that plaintiff failed to prove by a preponderance of the evidence that the automatic flashing signals were not functioning. Our reading of the record convinces us to the contrary.
We have determined that the driver of the tandem truck, Shirley Castille, had adequate time both for observation of the train and to complete a stopping maneuver. The evidence indicates that Mr. Castille was aware of the train’s presence, but unaware of the inability of the truck’s braking system to halt his vehicle’s forward progress prior to the point of impact. We have not found any evidence which would indicate that the truck driver’s view was obstructed, nor that any extraordinary efforts were needed on the part of the railroad to insure the safety of passing motorists. We have not found evidence of the railroad’s negligence, as must have been similarly concluded by the lower court.
We do not feel that this case presents a situation calling for the application of the “extra-hazardous or dangerous-trap” doctrine. As stated in McCray, supra:
“That doctrine may be applied where the physical circumstances are such that stopping, looking and listening will do the motorist no good or that he must place himself in a perilous position to discover an approaching train.”
By plaintiff’s own admission, he thought Mr. Castille had removed his foot from the truck’s accelerator at a distance far enough in advance of the crossing to facilitate the safe stopping of the truck. By Mr. Cas-tille’s own admission, he thought that he could stop the truck in advance of the crossing. However, upon application, the brakes failed and the truck veered into the left lane, ultimately colliding with the train’s caboose. There is also other evidence of record which indicates that subsequent to the collision, Mr. Castille commented upon the failure of his brakes.
For the above and foregoing reasons, the judgment of the lower court is affirmed. Appellant is to pay all costs of this appeal.
Affirmed.