PICKETT, Judge.
Plaintiffs-appellants are the surviving spouse and children of Mr. Henry Landry, who died in a collision between the pick-up truck he was driving and a railroad engine owned by the defendant-appellee.
The accident occurred at a railroad crossing at Chatsworth Road in St. Mary Parish, at approximately 6:30 A. M., on February 3, 1971. After a trial by jury, a verdict was returned in favor of defendant, dismissing plaintiffs’ suit; and a judgment was rendered pursuant thereto on March 1, 1973.
Thereafter, plaintiffs filed two applications for a new trial. The first application alleged errors relating to matters on the merits and, also, alleged jury misconduct. The second application alleged a possible, or suspected, bribery offer to a juror. Both applications were denied. Our examination of the records convinces us, for the reasons hereinafter set forth, that there was no error in the verdict of the jury. We find that the rulings of the trial judge, in excluding the evidence complained of, was not prejudicial to the appellants, for the reason that no material facts were kept away from the jury. Furthermore, the alleged jury misconduct does not justify a new trial, for the reason that we believe that the jury rendered impartial justice. Peire v. Martin, 14 La. 64. We concur in the denial of a new trial by the trial court. After the denial of their first motion for a new trial, on the 12th day of March, 1973, the appellants filed another application for a new trial. The judgment appealed from was signed on March 1, *296 1973. The second application for a new trial having been filed more than three days after the judgment was signed came too late; and cannot be considered. LSA-C.C.P. Article 1974.
With respect to the judgment on the merits, plaintiffs-appellees specify the following as errors:
1. The verdict of the jury was contrary to the law and the evidence.
2. The trial judge erred in not allowing Mr. Earl Luke, a St. Mary Parish Police Juror, to testify as to any requests made by the police jury or local citizens to the defendant railroad company concerning the subj ect crossing.
3. The trial judge erred in limiting the testimony of the state trooper who investigated the accident. (The record indicates that Trooper Bruno was apparently prepared to state that in his opinion the Chatsworth Road crossing was “hazardous”).
The evidence shows that prior to the accident Mr. Landry left home, picked up another man and drove to work, using the same route as was his normal routine. He apparently forgot something at home and was returning home at the time of the accident.
Mr. Landry was traveling south on Chatsworth Road, which intersects with the railroad track at approximately right angles. The engine was traveling “light”, or without cars, from west to east, approaching from Mr. Landry’s right. It was just about daybreak and the weather was clear.
There was a building on the west side of the Chatsworth Road about 650 feet north of the crossing. South of that point the view from the road to the west was clear. The track level was perhaps two to four feet above the road level. While there was some confusion in the questioning and answers about the speed limit for southbound traffic, the preponderance of the evidence shows that it was 35 miles per hour before the crossing and increased to 60 miles per hour on the south side of the tracks.
The state trooper who investigated the accident testified that Mr. Landry left about 68 feet of skidmarks leading up to the point of the collision. By reference to a correlation table, he said this indicated that Mr. Henry Landry’s speed prior to his attempt to brake was 35 miles per hour; but it is unclear to what extent the trooper considered the rise in the road level and the actual impact in arriving at the estimate.
Just prior to the accident, the engine had crossed the Charenton Bridge, located about 2,000 feet to the west of the crossing, at a speed of 40 miles per hour, and the engineer testified that he increased his speed slightly for a short distance and then started coasting toward the crossing. When the engine reached a whistle board about a quarter of a mile west of the crossing, the engineer activated the whistle, horn and bell. He and the three other crew members testified to this and to the fact that the lights on the leading end were operating. The speed limit for the engine, after crossing the bridge, was 60 miles per hour.
The engineer was the only crew member who had a view to the northside of the tracks as they approached the crossing. He said he noticed the pick-up truck after it had passed the south end of the building mentioned above, 650 feet north of the crossing. He estimated his own speed at 30 to 35 miles per hour, and he said he thought the other vehicle was traveling fast, but he could not estimate its speed. At a point when the engine was 187 feet west of the crossing, the engineer said he realized the driver of the pick-up truck would not, or could not, stop for the crossing, so he immediately activated the emergency brakes. He estimated that his speed had decreased to 10 to 15 miles per hour at the crossing. He said the engine continued across the road a distance of 70 to 80 feet.
*297 The engine nearly cleared the crossing. The truck hit at about the last one or two feet of the trailing end of the engine. The crossing was marked by the standard white cross-buck sign. The following statute, LSA-R.S. 32:171, applies to this factual situation:
“Whenever any person driving a motor vehicle approaches a railroad grade crossing under any of the circumstances stated in this Section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
% * * * * *
(3) A railroad train approaching within approximately nine hundred feet of the highway crossing emits a signal in accordance with R.S. 45:561, and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing.”
The jury returned a general verdict, so it is not known whether they found the railroad free from any negligence, or whether they found Mr. Landry was guilty of negligence which was either the sole cause or a contributing cause of the accident. In our opinion, the evidence demonstrates manifestly that Mr. Landry was negligent.
He was familiar with the crossing. The view to the west was clear for him from a point 650 feet north of the crossing. He did not see or hear what he should have seen or heard. He did not have his truck under such control as to enable him to comply with the requirements of LSA-R.S. 32:171, supra.
The facts and arguments presented in the case of McCray v. Illinois Central Railway Company, 244 So.2d 877 (La.App. 1st Cir., 1971), closely parallel those in the instant case. The facts in McCray were even more favorable to the motorist. We are of the opinion that the law as explained in the McCray decision and applied to the facts herein is dispositive of the issues of negligence in the instant case.
Plaintiffs-appellants contend in the alternative that the doctrine of last clear chance should be applied so that Mr. Landry’s negligence in placing himself in a perilous position from which he could not extricate himself should not bar recovery. We are not persuaded that the engineer should have discovered pr realized any sooner than he did that the approaching vehicle would not or could not stop for the crossing. From the state trooper’s testimony relative to speed and braking distances, it appears that Mr. Landry would have avoided the accident if he had acted only seconds sooner.
With respect to the trial court’s limitations on the testimony of the state trooper and Mr. Earl Luke, the police juror, relative to the alleged hazardous nature of the crossing, we agree with the trial court that the prejudicial effect would have far outweighed the value of the testimony, even if it were deemed relevant and admissible. Moreover, the testimony and exhibits show affirmatively that this crossing would not meet the jurisprudential requirements of an extra-hazardous crossing as explained in the McCray case, supra, and the cases referred to therein.
For the above and foregoing reasons, the judgment of the trial court is affirmed, at plaintiffs-appellants’ costs.
Affirmed.