392 So.2d 1084 (1980)
Leroy J. THIBODEAUX and Lucy L. Thibodeaux, Plaintiffs-Appellants,
v.
Mark CARLOCK et al., Defendant-Appellee.
No. 7878.
Court of Appeal of Louisiana, Third Circuit.
December 17, 1980.
Rehearing Denied February 9, 1981.
*1085 Reuvan N. Rougeau, Lake Charles, for plaintiffs-appellants.
Anderson, Leithead, Scott, Boudreau & Savoy, Everett R. Scott, Lake Charles, for defendant-appellee.
Before GUIDRY, STOKER and DOUCET, JJ.
DOUCET, Judge.
This is a wrongful death action arising out of a collision between a pickup truck and a train. At issue, is whether the Missouri and Pacific Railroad Company was negligent.
Don Walter Thibodeaux, a guest passenger in the pickup truck, was killed. His parents sued the driver of the pickup truck, the insurer of the pickup truck and the railroad. Prior to trial, a compromise was reached between the plaintiffs and the insurer of the pickup truck releasing all the defendants except the railroad. The trial court found the railroad was not negligent. Plaintiffs appealed.
The appellants contend the railroad is negligent in two respects: 1) the train engineer failed to keep a proper lookout and 2) past malfunctions of the crossing signals, which caused them to activate when no train was on the tracks, lulled the driver of the pickup truck into believing he could cross the tracks without watching for approaching trains.
Additionally, the appellants contend the trial court erred in refusing them an opportunity to prove subsequent repairs to the crossing.
The collision occurred at approximately 12:30 a. m. June 8, 1978, at the Missouri Pacific Railroad crossing on Louisiana Highway 14 in Lake Charles, Louisiana. Highway 14 is a four-lane highway running north and south. One set of tracks cross Highway 14 running east and west. The crossing is equipped with overhead flashing lights and ringing bells, which are activated automatically upon the approach of a train. It is uncontested the lights were flashing and the bells ringing at the time of the collision.
The train's engineer testified the train's headlight, bells, class lights, number lights and gauge lights were operating at the time of the collision. The engineer further testified *1086 he was blowing the train's whistle as he approached the crossing. The train was traveling east at a speed of approximately 3-4 miles per hour. Upon feeling the impact of the pickup truck, the engineer immediately applied the emergency braking system. The engineer did testify his view to the north down Highway 14 was partially obscured by a control panel in the engine. He never saw the pickup truck approaching the crossing. The members of the train crew substantiated his testimony.
The driver of the pickup truck testified he was traveling south on Highway 14 in the right lane at approximately 40-45 miles per hour. About a half-mile before the crossing, he saw the crossing lights flashing and two cars in the left lane going south. The two cars crossed over the crossing approximately 110 feet in front of him. The driver testified he had crossed over the crossing on three previous occasions that evening when the crossing signals were functioning and he had not seen a train approaching. On each of these occasions he had slowed down and looked for an approaching train. At the time of the collision, the driver never slowed down, applied his brakes or saw the train.
The passenger side of the pickup truck, beginning at the headlight, caught the engine's plow ripping off the passenger side of the pickup truck. The pickup truck continued over the crossing coming to rest about sixty feet from the crossing. The front end of the engine stopped just west of the crossing.
It is well settled that the train crew can assume drivers will bring their vehicles to a stop when all crossing signals are functioning properly unless the vehicle's approach is so unusual as to place an ordinarily prudent man on notice the vehicle cannot be brought to a stop in time to avoid a collision. Edwards v. Missouri Pacific, 291 So.2d 483 (La.App. 3rd Cir., 1974).
The appellants argue that an exception to this rule operates in areas where traffic is heavy, requiring a train to be operated at speeds which permit its being stopped in time to avoid injury. And, had the engineer in this instance been able to see the pickup truck approaching, the slow speed of the train would have allowed him to stop, avoiding the collision.
The expert testimony showed that at the time the engineer would have become aware the pickup truck's approach represented a hazard, there was nothing the engineer could have done to prevent a collision. The burden to stop is placed upon the driver of a vehicle since a vehicle can stop in a much shorter distance than a train. LSA-R.S. 32:171; 45:563. The train crew did all that it was required in warning approaching vehicles of the train's presence. LSA-R.S. 45:561. There is no showing the train crew violated any duty it owed the driver of the pickup truck.
In their second argument, the appellants draw an analogy to the "dangerous trap" doctrine contending the driver of the pickup truck was relieved of his duty to stop at the crossing by the earlier malfunction of the crossing signals. The driver believed that no train would be approaching since he had not seen a train when he had crossed over the crossing several times earlier in the evening under the same conditions.
Discussing the "dangerous trap" doctrine in McRay v. Illinois Central Railway Co., 244 So.2d 877 (La.App. 1st Cir., 1971) the court stated:
"That doctrine may be applied where the physical circumstances are such that stopping, looking and listening will do the motorist no good or that he must place himself in a perilous position to discover an approaching train."
The evidence is overwhelming that had the driver of the pickup truck stopped at the crossing, he would have seen the train. The driver of a vehicle cannot be relieved of his duty to stop at a railroad crossing simply because he believes the crossing signals are malfunctioning.
The appellants presented several witnesses who said they had crossed over the crossing when the crossing signals were functioning and had not seen a train. Only *1087 two of them were able to state when such instances occurred and done of those instances coincided with a testing of the crossing signals. The testimony of the signal maintenance man and his inspection logs showed the crossing signals functioned properly before and after the collision. The appellants failed to prove by a preponderance of the evidence the crossing signals had malfunctioned earlier.
The trial court was correct in refusing to admit evidence of subsequent repairs to the crossing. See Givens v. DeSoto Building Co., 156 La. 377, 100 So. 534 (La. 1924); Esta v. Dover Corporation, 385 So.2d 439 (La.App. 1st Cir. 1980).
The decision of the trial court is affirmed. Appellants are to pay the costs of this appeal.
AFFIRMED.