444 So.2d 1293 (1984)
Oscar DAVILA, et al.
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al.
No. 83-CA-280.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1984.
Rehearing Denied February 17, 1984.
Writ Denied April 2, 1984.
*1295 Carlos Zeledon, James Maher III, New Orleans, for plaintiffs-appellees.
Hubert A. Vondenstein, Steven B. Witman, Gretna, for defendant-appellant.
Before BOUTALL, KLIEBERT, BOWES, GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
The Parish of Jefferson appeals the judgment in favor of appellees, Oscar and Mercedes Davila, for the wrongful death of their son. Eighteen-year old Napoleon was killed when a train struck the car he was operating. Appellant argues the trial court erred (1) in finding the Parish of Jefferson had actual or constructive notice of the condition of the road which they maintained, (2) in finding a hole in the road was a cause in fact of the accident, and (3) in finding Napoleon Davila free of contributory negligence. Appellees answer asserting the award of $20,000 to each parent should be increased. We affirm.
On August 27, 1978, Napoleon Davila was driving south on South Kenner Road in Jefferson Parish to dispose of family trash at the dump. Napoleon reached a crossing of railroad tracks and drove past the northern gate and over the northern set of tracks owned by the Missouri Pacific Railroad. When Napoleon reached the southern set of tracks, the automobile was struck by a train owned and operated by Southern Pacific Transportation Company. Napoleon Davila was killed as a result of the accident, and his parents, Oscar and Mercedes Davila, instituted this suit against both Southern Pacific and the Parish of Jefferson for damages.
A bifurcated trial was held with the jury deciding issues of negligence relative to defendant, Southern Pacific, and the court deciding issues of negligence relative to defendant, Parish of Jefferson. On the 21st of May 1982, the jury returned a verdict in favor of defendant, Southern Pacific, finding it free of negligence, and on June 15, 1982, the court rendered judgment consistent with that verdict. The trial court rendered judgment on June 30, 1982 in favor of Oscar and Mercedes Davila for $20,000 each and $1663.28 special damages for funeral expenses, cemetery charges, and emergency room fees against defendant, Parish of Jefferson.
In its reasons for judgment, the trial court made the following factual conclusions: Napoleon Davila passed around a lowered guard rail and stopped his car on the railroad track when he saw the approaching train. The engineer of the train reported seeing the automobile roll backwards and forwards prior to the collision. Napoleon Davila's automobile became trapped in a deep water-filled hole in the road adjacent to the track, that he was unable to extricate himself from it, and that this was the proximate cause of the accident. The trial court further found that the Parish had received notice on prior occasions of the defects in the road and had done nothing to remedy it. Based on these factual conclusions, and an agreement introduced into evidence between Southern Pacific Railroad and the Parish of Jefferson showing the Parish agreed to assume responsibility for maintaining the area of road in which the hole was located, the court found the Parish of Jefferson guilty of negligence.
After a careful review of the record, we accept the findings of the trial court, except the conclusion that Napoleon stopped his car on the track when he saw the approaching train, noting the contradictory evidence on this point. Joseph Hankton, Jr., engineer for Southern Pacific, testified at trial he first saw the car going around the northern crossing gate and over the adjacent set of tracks. He then temporarily *1296 lost sight of the car and saw it again as he came up on the Southern Pacific tracks, stopped, rolled back about a foot, rolled forward, and then stopped. However, according to the Sheriff's deputy who investigated the accident just subsequent to its occurrence, the engineer reported that when the train rounded the curve he saw the vehicle already across the track. Thus, when the event was fresher in the mind of the engineer, he remembered first seeing the car on the track, not driving toward it. The only other witness to the accident who testified at trial was the brakeman of the train. He testified he first saw the vehicle on the Southern Pacific Railroad track. Thus, it is more likely Napoleon Davila had been on the track prior to the train approaching but was unable to free himself from his predicament in time.
An analysis of this negligence case involves evaluating the relationship between the Parish of Jefferson's duty and the particular risk involved. The Parish of Jefferson has a duty to maintain a safe roadway traversing the railroad track to prevent the risk of a vehicle becoming trapped on the track. The record is replete with testimony establishing the Parish breached its duty to reasonably maintain the road and the Parish had constructive if not actual notice of the dangerous situation. Ken Rauch, who lived a mile and a half from the crossing for 20 years, stated:
The worst hole coming north to the south was on the right-hand side but that was the worst hole but they had so many trucks passing back and forth that you don't know where you're going to have another new hole because the asphalt was so deteriorated when if a big truck comes over and slams on his brakes well he done created another hole. That's how soft it was back there and bad.
Mr. Gilbert Smith, who lived three blocks from the railroad crossing, substantiated the testimony that the road surface was torn up very badly with holes and high mounds. Mr. Floyd Dyson, who lived onehalf mile north of the South Kenner crossing, used the route over the crossing every day to and from work. He stated that for practical purposes, the tracks were impassable for passenger vehicles because of the deplorable condition of the blacktop. Mr. Dyson also testified he complained to the Parish about the roadway conditions. Although we would not say the Parish of Jefferson could have prevented the roadway deterioration, the Parish is required to make reasonable maintenance efforts and reasonable inspections. The Parish of Jefferson, therefore, either knew or should have known of the dangerous condition of the roadway and should have made reasonable inspections and maintenance efforts to remedy the situation or to warn passersby of the dangerous condition. Because of the long duration of time that the condition existed, as established by witnesses at trial, we find the Parish of Jefferson had constructive notice of the defect and failed to remedy it. Swain v. Sewerage and Water Board of New Orleans, 413 So.2d 233 (La.App. 4th Cir.1982); State Farm Mut. Auto. Ins. Co. v. Slaydon, 376 So.2d 97 (La.1979).
Appellant argues on appeal there is no evidence in the record to support a finding that the hole played a causative role in the accident. The plaintiff's burden in this case is to prove causation by a preponderance of the evidence. This burden may be met either by direct or circumstantial evidence. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 (1963). Taken as a whole circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981). Appellants assert there are many other possible causes of the collision. However, the existence of these other possibilities does not negate the circumstantial case proven here that the pothole was the cause of the accident. The existence of one particularly large pothole in direct proximity to the tracks where the Davila vehicle was spotted is uncontroverted. The observation of the engineer that *1297 he saw the car roll forwards and backwards about a foot would support a finding the car was stuck in the pothole and Napoleon was unable to extricate the car from it. The evidence of Napoleon's plight in the pothole fairly excludes other reasonable hypotheses as one is presumed to act in response to natural instincts of self-preservation and not expose oneself to unnecessary risk of death. Watson v. Illinois Central Gulf Railroad, 355 So.2d 1366 (La.App. 1st Cir.1978).
Appellants strenuously assert appellees should be barred from recovery because of the contributory negligence of Napoleon. They argue that by driving around a lowered crossgate in violation of La.R.S. 32:171[1] Napoleon Davila was negligent. However, the evidence is overwhelming the crossing gate, at this particular crossing, malfunctioned on a regular basis. John Matran, a paramedic employed by Jefferson Fire Department and Emergency Medical Services, testified at trial he observed two types of malfunctions. At times, he stated, the arms would be down with no train coming and, at other times, he witnessed the arms rapidly going up and down with lights flashing. Mr. Rauch testified he went through the crossing the evening before and the morning of the accident and the gates were malfunctioning at that time. The north gate was going up and down. He stated, "you'd sit there and wait five, ten minutes and then you'd try to sneak around it because it had been operating in this manner for quite a few days." Mr. Dyson testified about the malfunctions of the crossing arms, having witnessed times when the arms were going up and down, times when the arms were down and no train was passing, and times when the arms were up and the train was passing. He stated the crossing signals malfunctioned two to three times a week and as a motorist he could not rely on them. Mr. Smith saw the signals malfunctioning with lights blinking and the cross arm down yet no train coming. He testified one morning he went through the crossing with gates lowered three times within 15 minutes and saw no train approaching. He also witnessed the arms going up and down rapidly and one knocked off the crossing. Mr. Smith stated, "the only thing that signal means to me is that the lights are not burned out." When questioned why, he stated, "like I say, they'd be down and the train wouldn't be coming." Mrs. Billy Slaton, who lived approximately a half-block from the Davilas along South Kenner Road, testified about the malfunctioning signals and stated she did not trust the crossing.
Despite all of the foregoing testimony, appellant relies on the case of Thibodeaux v. Carlock, 392 So.2d 1084, 1086 (La.App. 3d Cir.1980) which states, "The driver of a vehicle cannot be relieved of his duty to stop at a railroad crossing simply because he believes the crossing signals are malfunctioning." While we would agree one is still under a duty to stop, look, and listen at a railroad crossing when the signals indicate an approaching train, we are also of the opinion that given the history of frequent malfunctions at the crossing, *1298 it is not per se negligence to then go around a lowered cross gate if done with great care and attention.
We feel the facts establish that when Napoleon Davila went around the cross gate that either the train had not yet reached the point where it was sounding its whistle or because of the airplane noise and the high vegetation, combined with the curve of the tracks, he was unable to detect its presence. Mr. Rauch stated the airplane noise in the area was very loud and that one could not see a train when it came out of the curve on the Southern Pacific tracks because of vegetation. He stated one's front tires had to be almost on the tracks before you could see the train coming out of the curve. Mr. Dyson also testified planes were flying overhead every three to four minutes in the summer of 1978 and that the sound drowned out all other sounds. He agreed with Mr. Rauch that one had to be almost to the tracks to look down the track. Mr. Smith agreed one had to be very close to the track to see down the curve and agreed the plane noise in the area was very loud. Mr. Slayton testified he had experienced being unable to hear a train until the last minute as a jet had passed overhead and the jet noise was louder than the train.
Therefore, we find Napoleon Davila approached the Southern Pacific Railroad track with reasonable care when his car became lodged in a deep pothole. From the time he could see the train as it rounded the curve, he had approximately only 11 to 20 seconds to extricate his car and/or himself. Appellant would have us rely on the case of Johnson v. Clade, 309 So.2d 794 (La.App. 4th Cir.1975) which stated in a similar situation that a man was contributorily negligent in failing to heed the warning whistle of the train and to escape from the car. However, the Johnson case deals with a longshoreman who had been working around the waterfront for many years. The court felt from this man's experience he should have known it would be prudent to watch for approaching rail traffic in sufficient time to abandon his vehicle. However, in our case, we are dealing with an eighteen-year old high school student who was driving his parents' car on a family mission to dispose of the family trash. He was described as a polite, quiet child who was at all times obedient. We cannot say that Napoleon Davila was a contributing proximate cause of the ensuing collision. Rather, we are of the opinion that the risk of injury from a motorist's panicked reaction to the sudden presence of a train bearing down on his vehicle produced by the Parish's failure to provide a passable surface, is within the scope of protection of the rule of law which requires the Parish to maintain safe roadways.
Appellees assert the trial court awarded insufficient damages in view of the facts of the case and the prevailing jurisprudence. Appellate court review of quantum is guided by two basic principles: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury abused its much discretion accorded by La.C.C. art. 1934(3)[2]; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion.
The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Bitoun v. Landry, 302 So.2d 278 (La. 1974); Coco v. Winston Industries, Inc., 341 So.2d 332, 334 (La.1976).
Although appellees cite cases which awarded a far greater sum than the quantum in the instant case, appellant cites cases which found a $20,000 award to each parent reasonable. Therefore, the present *1299 award is not clearly out of line with the existing jurisprudence. After a review of the record, we find the award to be reasonably supported by the evidence and justifiable inferences so as not to be an abuse of the trial court's much discretion.
For the reasons assigned, we affirm the judgment of the trial court in favor of appellees, Oscar and Mercedes Davila, in the amount of $20,000 each, plus special damages in the amount of $1663.28, together with legal interest from date of judicial demand, plus all costs of the lower court proceedings. Each party is to pay their own costs on appeal.
AFFIRMED.
BOUTALL and GAUDIN, JJ., dissenting.
BOUTALL, Judge, dissenting.
I agree with the finding of negligence upon the Parish of Jefferson based upon its failure to maintain the roadway properly. There is ample evidence to support the trial judge's finding that a large pot-hole was in the roadway at this point where vehicles would normally traverse and that the plaintiff's vehicle got trapped in the pot-hole and he could not extricate himself timely.
However, I dissent because I am convinced that the decedent driver was guilty of contributory negligence and that by his actions, he assumed the risk of being hit by an oncoming train. The trial judge in his Reasons for Judgment did not discuss the question of contributory negligence, but he stated the following: "Evidence adduced at trial indicated that Napoleon Davila passed around a lowered guard rail, and stopped his car on the railroad tracks apparently when he saw the approaching train."
L.R.S. 32:171 requires a motorist to stop within 50 feet but not less than 15 feet from the nearest rail of a railroad and not to proceed until he can do so safely when a crossing gate is lowered and when clearly visible electrical signal devices give warning of the immediate approach of a railroad train. It logically follows that a motorist perceiving such a situation must conclude that there is more danger present than if the signals are not in operation. When he chooses to ignore the safety barrier and drive upon the track, he must be even more attentive to imminent danger and ascertain that the way is clear. In this case the position of the track upon which the collision was had and the warning gate for vehicles travelling in that direction is apparently 100 feet or so, there being two sets of railroad tracks in this area. The evidence produced by the railroad clearly showed that the train gave whistle, bell and light signals upon its approach. Even presuming for the sake of argument that the driver was aware that on prior occasions the gate may be down with no trains approaching, there was at least 90 feet of safe area during which the decedent could have observed or heard the approach of the train. Certainly, if the engineer could see him, he could see the train.
There is nothing in the opinion of the trial judge which indicates that he did not give full credibility to the testimony of the engineer. Indeed to the contrary, it appears that he accepted that testimony. Parenthetically, this case was also tried by jury trial simultaneously against the railroad as a defendant. The jury found no negligence on the part of the railroad and presumably also considered the credibility of the engineer to be good.
For these reasons, I would reverse the judgment of the trial court rendering judgment in favor of the Parish of Jefferson dismissing plaintiffs' suit.
GAUDIN, J., dissents for the reasons assigned by BOUTALL, J., above.
NOTES
[1] § 171. Obedience to signal indicating approach of train

A. Whenever any person driving a motor vehicle approaches a railroad grade crossing under any of the circumstances stated in this Section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;
(2) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a railroad train;
(3) A railroad train approaching within approximately nine hundred feet of the highway crossing emits a signal in accordance with R.S. 45:561, and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing.
B. No person shall drive any vehicle through, around or under any crossing gate or barrier at a railroad crossing while such gate or barrier is closed or is being opened or closed. Acts 1962, No. 310, § 1.
[2] Art. 1934. Measure of damages for breach of contract ...

3....
In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, ...